[685 NYS2d 670]

IFD Construction Corporation, Respondent, v Corddry Carpenter Dietz and Zack et al., Appellants, et al., Defendants.

First Department, February 23, 1999

APPEARANCES OF COUNSEL

*Paula M. Gart* of counsel (*L'Abbate, Balkan, Colavita & Contini, L. L. P.,* attorneys), for appellants.

No appearances for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Defendant engineers Corddry Carpenter Dietz and Zack (CCDZ) and Seelye Stevenson Value and Knecht (SSVK) appeal from the denial of their motions to dismiss the complaint alleging, as against them, negligent misrepresentation, for failure to state a cause of action and as barred by the Statute of Limitations. In addition, CCDZ moved, alternatively, for summary judgment.

Plaintiff IFD Construction Corporation was the labor and materials contractor under an April 21, 1993 contract with the

City of New York for the construction of the College Point Bus Facility in Queens. Defendants were the engineering firms that the City had previously retained to prepare the contract drawings and plans and specifications for the project. In its complaint, IFD alleges that its work was delayed and additional work necessitated because the contract documents prepared by the engineers were deficient in that they falsely represented that contaminated/hazardous soil would not be encountered in the course of the work and that bitumen-coated piles could be driven in cold weather.

Although the engineers contracted with the City only, IFD alleges that they were aware that IFD, as well as other bidders, would rely on their contract drawings and specifications in preparing a bid for the construction project. Thus, IFD argues, the defendant engineers had a duty to it that required them to prepare the bid documents in conformity with a professional standard of care, which, because of their negligent misrepresentations, has not been met. Distilled to its essence, IFD's claim is that its construction costs exceeded its agreed-to price. IFD seeks $6,000,000 in increased costs and delay damages.

The defendant engineers moved for dismissal of the claim for negligent misrepresentation on three distinct grounds. They argued that IFD's claim, which accrued when IFD agreed to perform the work at a price calculated in alleged reliance on the misrepresentation, was barred by the three-year Statute of Limitations applicable to a contractor's negligence claims against an engineer not retained by it. They also argued that IFD could not demonstrate reasonable and justifiable reliance on the alleged misrepresentations and, finally, that the claim for negligent misrepresentation is deficient as there is neither contractual privity nor the functional equivalent of privity between IFD and the engineers to support such a claim. As noted, CCDZ also moved for summary judgment.

The IAS Court denied the motion, finding that the parties were in a relationship approaching privity. It rejected the Statute of Limitations argument, holding that the engineers' performance continued throughout the course of the project so that the parties' professional relationship continued until February 27, 1996, the last date that IFD worked on the project. The court failed to address the engineers' argument that IFD's reliance on the alleged misrepresented conditions contained in the contract documents was not justifiable. We reverse.

■ It is not disputed that the three-year limitation of CPLR 214 (6) controls in a negligence action against a professional,

such as an architect or engineer. (*Ackerman v Price Water-house*, 84 NY2d 535.) The issue here is over the accrual date. In ruling that a contractor's claim of negligence against the project engineer accrues on the completion of the project, the IAS Court failed to recognize the differing rights of the owner who retained the engineer and a party outside of that relationship who is allegedly injured as a result of the engineer's negligence.

In that regard, an owner's claim against a construction contractor for defective workmanship accrues upon completion of the construction (*City School Dist. v Stubbins & Assocs.*, 85 NY2d 535, 538; *Rotterdam Sq. v Sear-Brown Assocs.*, 246 AD2d 871, 872). An owner's claim against an architect or engineer accrues when the professional relationship ends, usually upon issuance of the final payment certificate under the contract. (*See, Matter of Kohn Pederson Fox Assocs. [FDIC]*, 189 AD2d 557; *Methodist Hosp. v Perkins & Will Partnership*, 203 AD2d 435.) On the other hand, in the context of a personal injury action against a design professional by a party who did not retain the design professional, the cause of action accrues on the date of injury (*Cubito v Kreisberg*, 69 AD2d 738, *affd* 51 NY2d 900), the date when, as the Court of Appeals has noted, the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint (*Snyder v Town Insulation*, 81 NY2d 429, 432-433).

In a negligence action based upon reliance on a design professional's allegedly defective work product, such as contract documents upon which a contractor's bid decisions are based, the cause of action cannot accrue until the date that the work product is received, since that is the earliest date on which the injured party, who did not retain the professional, could have relied upon it. (*See, Credit Alliance Corp. v Andersen & Co.*, 101 AD2d 231, 236-237, *revd on other grounds* 65 NY2d 536; *Ackerman v Price Waterhouse, supra*, 84 NY2d, at 538, 541.)

Here, the gravamen of the wrong complained of is that IFD calculated its bid price on the basis of documents and specifications prepared by the defendant engineers, who negligently misrepresented the soil conditions at the project site. Thus, IFD was injured when the forces alleged to have produced that injury were put in motion, that is, at least by the time IFD agreed to its formulated bid price by entering into a construction contract with the City on April 21, 1993, more than three years before the June 25, 1996 commencement of this action. It did so with full knowledge of, and reliance on, the terms, condi-

tions and content of the contract documents. Having allegedly relied on the engineers' negligent misrepresentations in the contract documents in formulating its supposed unrealistically low bid, IFD was, for purposes of the Statute of Limitations, injured at that time. In that regard, the aggrieved party need not be aware of the wrong or injury for the cause of action to accrue. (*Supra*, at 541.)

In any event, and separate and apart from the Statute of Limitations defense, IFD's negligent misrepresentation claim should be dismissed for failure to show reasonable and justifiable reliance on the alleged misrepresentations. (*See*, *General Elec. Capital Corp. v United States Trust Co.*, 238 AD2d 144.) The defendant engineers' design of the project, as approved by the City, was part of the final bid package for all interested construction bidders. Among other things, it provided for the installation of bitumen-coated piles. The design also set forth the manner in which the construction contractor was to excavate, remove and otherwise deal with contaminated soil at the site. The City retained a construction management firm to oversee the construction. Thereafter, the project was let out for bids. Those contractors desiring to bid obtained a copy of the bid documents, which included the defendant engineers' design drawings and technical specifications, the contract's general and supplementary conditions and the Specifications.

The latter advised bidding contractors that they "must carefully view and examine the site of the proposed work, as well as its adjacent area, and seek other usual sources of information for they will be conclusively presumed to have full knowledge of any and all conditions on, about or above the site relating to or affecting in any way the performance of the work to be done under this Contract which were or should have been indicated to a reasonably prudent bidder." A bidder was required to attest that he "has visited and examined the site of the work and has carefully examined the Contract."

Bidders were also expressly advised in the Specifications and made aware, prior to formulating their bid price, that they would be required to work with contaminated soil: "The Contractor shall refer to the Supplementary Conditions for an Allowance to excavate, load, haul and legally dispose of soil soaked by petroleum products. This soil may be encountered in the vicinity of the existing underground storage tanks for diesel fuel, gasoline, waste oil, lubricating oil, etc." The Specifications informed bidders that the fixed payment of $100,000 was to be paid to the construction contractor for the removal of oil-

soaked subsoil; it also advised prospective bidders that the "Construction Manager will monitor ongoing work for discovery of hazardous materials." Thus, there is no merit to IFD's argument that the engineers misrepresented that it would not encounter hazardous conditions and contaminated soil, the existence of which the contract documents clearly contemplated.

In the face of its contractual obligations and responsibilities to the contrary, IFD, as a matter of law, cannot be heard to say that it reasonably relied upon any alleged misrepresentations. (*See, General Elec. Capital Corp. v United States Trust Co.*, 238 AD2d 144, *supra.*) IFD was under a duty to inspect the work site and the soil conditions for itself. (*See, Barsotti's, Inc. v Consolidated Edison Co.*, 245 AD2d 178; *see also, Costanza Constr. Corp. v City of Rochester*, 147 AD2d 929, *appeal dismissed* 74 NY2d 715, 83 NY2d 950, *rearg denied* 84 NY2d 851; *Bilotta Constr. Corp. v Village of Mamaroneck*, 199 AD2d 230.) " '[W]here a party has means available to him for discovering, "by the exercise of ordinary intelligence", the true nature of a transaction he is about to enter into, "he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" [citation omitted].' " (*Ittleson v Lombardi*, 193 AD2d 374, 376, quoting *East End Owners Corp. v Roc-East End Assocs.*, 128 AD2d 366, 370-371.) Thus, even if the duty of inspection were not sufficient to preclude a finding of reasonable reliance, the precise hazardous soil conditions complained of were specifically contemplated by the contract documents.

As to IFD's other claim of misrepresentation, that is, "that the bitumen coated piles could be driven in cold weather", the engineers made no such affirmative representation. Rather, IFD relies on an alleged omission in the face of a duty to speak. In this regard, bidders were advised, "Do not apply primer or bitumen in wet weather, nor when the temperature is below 65 degrees F." Thus, while prospective bidders were cautioned as to the application of primer and bitumen coating in cold weather, nothing was said prohibiting the driving of piles in such weather. Apparently, bitumen coating, when applied in cold weather, becomes brittle and separates itself from the pile when it is driven by a pile-driving hammer. While a partial disclosure may be deceptive (*Stambovsky v Ackley*, 169 AD2d 254, 257), the caution to avoid coating piles in cold weather in no way suggested that pile driving could be accomplished in such weather after the piles had been coated with bitumen (*see, Barsotti's, Inc. v Consolidated Edison Co.*, 245 AD2d 178, *supra*).

That the IAS Court correctly found that the parties were in so close a relationship as to be the functional equivalent of privity inasmuch as the engineers were aware of the purpose of their design plans and that IFD was part of a definable class that would rely on the bid documents (*see, Reliance Ins. Co. v Morris Assocs.*, 200 AD2d 728; *Pile Found. Constr. Co. v Berger, Lehman Assocs.*, 253 AD2d 484) does not change the result. IFD's claim still fails since the requisite reliance by IFD on the misrepresentations was, as discussed, neither reasonable nor justified. (*Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377.)

Accordingly, the order of the Supreme Court, New York County (Louis York, J.), entered May 8, 1997, denying the defendant engineers' motion to dismiss the complaint against them for, *inter alia*, failure to state a cause of action and as time barred, should be reversed, on the law, with costs and disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

WALLACH, WILLIAMS and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered May 8, 1997, reversed, on the law, with costs and disbursements, and defendants-appellants' motion to dismiss the complaint against them granted.