■ PARSONS BRINCKERHOFF QUADE & DOUGLAS, INC., Respondent, v ENERGYPRO CONSTRUCTION PARTNERS, Appellant. [707 NYS2d 30] —Order, Supreme Court, New York County (Barbara Kapnick, J.), entered March 23, 1999, which held in abeyance the application of petitioner Parsons Brinckerhoff Quade & Douglas, Inc. (Parsons) for a stay, pursuant to CPLR 7503 (b), of the arbitration demanded by EnergyPro, and referred to a Special Referee for a hearing and report the question of whether EnergyPro's claims against Parsons are barred by the Statute of Limitations, unanimously reversed, on the law, without costs, the application for a stay denied, arbitration directed, and the petition dismissed. Appeal from order, same court and Justice, entered August 3, 1999, denying EnergyPro's motion for reargument, unanimously dismissed, without costs, as taken from a non-appealable order.

Pursuant to a contract dated April 23, 1990, and subsequently amended on December 20, 1990 and April 15, 1991, Parsons was hired to provide engineering and planning services involved in the construction of a new cogeneration plant at John F. Kennedy International Airport, as well as the redevelopment of the Airport's central heating and refrigeration plant. The parties' agreement contained an arbitration clause, and on or about October 20, 1998, EnergyPro served Parsons with a demand for arbitration, asserting substantial cost overruns allegedly attributable to Parsons' negligence, malpractice and breach of contract. Parsons then moved to stay the arbitration, alleging it was barred by CPLR 214 (6)'s three-year Statute of Limitations. The determinative issue is whether EnergyPro's claims against Parsons accrued before or after October 20, 1995.

An owner's claim against a design professional accrues upon the termination of the professional relationship between the parties, when the designer completes its performance of significant (i.e., non-ministerial) duties under the parties' contract (*see, State of New York v Lundin*, 60 NY2d 987, 989 [issuance of final certificate, "a significant contractual right of the owner," marks the completion of performance]; *Board of Educ. v Celotex*, 88 AD2d 713, 714, *affd* 58 NY2d 684 ["(c)ompletion is not a statutorily defined word but must be judicially interpreted in light of the given situation and the responsibilities of the parties in carrying out their agreement"]; *IFD Constr. Corp. v Corddry Carpenter Dietz & Zack*, 253 AD2d 89, 92 [relationship usually ends upon issuance of final payment certificate under the contract]; *Methodist Hosp. v Perkins & Will Partnership*, 203 AD2d 435 [same]; *Matter of Kohn Pederson Fox Assocs. [FDIC]*, 189 AD2d 557 [same]).

As applied to this case, the parties' amended contract specifically required that, "Upon completion of the project and after the units are accepted by [KIAC Partners*] for commercial operation, engineer's drawings will be revised in accordance with changes made in the field during construction, based on Contractor prepared and furnished marked up construction drawings representing all approved changes and as-built conditions. One (1) aperture card, one (1) sepia and one (1) print of each installation 'as built' drawing will be supplied to [KIAC Partners]." Because the majority of "as built" drawings required by the specific language of the agreement were issued after October 1995, EnergyPro's claims are not barred. The obligation to furnish "as built" drawings to EnergyPro was a significant contractual obligation. These drawings were not incidental post-construction activities which would not delay accrual of a cause of action (*see, Cabrini Med. Ctr. v Desina*, 64 NY2d 1059, 1061 [incidental masonry repair work]; *Phillips Constr. Co. v City of New York*, 61 NY2d 949, 951 [claim accrued although incidental matters related to the project remained open]). On the contrary, they were a negotiated service specifically outlined in an amendment to the contract, intended to help resolve future maintenance or repair issues that might arise in the operation of the facility. EnergyPro's demand for arbitration, brought within three years of the date all of the "as built" drawings were completed, was therefore timely. Concur—Sullivan, P. J., Mazzarelli, Ellerin, Lerner and Friedman, JJ.

---

* In March 1993, KIAC Partners assigned its agreement with Parsons to EnergyPro, an entity KIAC Partners had formed to manage the project.