**Bruce GEBHARDT and Celeste Gebhardt, Plaintiffs,**

v.

**ALLSPECT, INC., Defendant.**

**No. 00CIV.0062(WCC).**

United States District Court, S.D. New York.

May 16, 2000.

---

was ordered to be completed by December 15, 1999, remains closed.

is thus subject to the six-year statute of limitations provided by N.Y.C.P.L.R. § 213. For the reasons that follow, defendant's motion is denied.

## BACKGROUND

The following discussion of the facts is based on the allegations in plaintiffs' complaint.[1] Plaintiffs, husband and wife, purchased their residence on Lookout Road in Tuxedo Park, New York for $1.5 million in 1996. The residence had been advertised as an historic home and the sellers represented to plaintiffs that the home needed no significant repairs and was essentially in "move-in" condition. However, the sellers would make no representations or warranties as to the condition of the house.

Richards & O'Neil, LLP, for Plaintiffs, New York, NY, Ted Poretz, of Counsel.

Traub Eglin Lieberman Straus, for Defendant, Hawthorne, NY, Laurel A. Gathman, of Counsel.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Bruce and Celeste Gebhardt bring the instant action against defendant Allspect, Inc. alleging that defendant improperly performed an inspection of their home. Plaintiffs claim that they purchased the home in reliance on defendant's inspection and suffered damages as a result. Defendant now moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the action is barred by the three-year statute of limitations applicable to nonmedical malpractice actions set forth in N.Y.C.P.L.R. § 214(6). Plaintiffs claim that the action is an action for breach of contract or, in the alternative, negligence in the performance of defendant's home inspection obligations, and

Prior to closing on the purchase of the house, plaintiffs hired defendant to perform a building inspection and issue a report indicating the condition of the house, including any significant defects requiring repair. The parties entered into a Home Inspection Authorization Agreement dated August 2, 1996, whereby defendant agreed to use its "best efforts and abilities to perform the inspection and prepare the report in accordance with the CODE OF ETHICS and STANDARDS OF PRACTICE of the American Society of Home Inspectors, Inc." (Complt., Ex. B.) On or about August 4, 1996, defendant issued a report of its inspection.

The report, which was attached to the Complaint, listed defects plaintiffs claim were consistent with representations made to plaintiffs by the sellers of the house. A "Defects Summary" was included in the report. The Defects Summary listed several defects uncovered during inspection of the home and the estimated cost of repairing them. (Complt., Ex. A.) According to this summary, taking the upper limits of

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on*

other grounds, *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993).

the ranges of estimates, the estimated total cost of repairs was $6,205. (*See id.*)

In reliance on the report, including the Defects Summary and the report's conclusion that no major repairs were necessary, plaintiffs purchased the house for $1.5 million and moved in shortly thereafter. Plaintiffs claim that "[a]lmost immediately" after moving into the house, they began to notice unsafe conditions omitted from defendant's report. (Complt.¶ 13.) Plaintiffs contend that, among other things, defendant failed to discover that the roof of the residence was substantially separated from the facade of the house and the house lacked a proper drainage system.

Plaintiffs state that they have spent $1 million on repairs to date and that more repairs are necessary.

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss under Rule 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (*quoting Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995).

In assessing the legal sufficiency of a claim, the Court may consider not only the facts alleged in the complaint, but also any document attached as an exhibit to the Complaint or incorporated by reference. *See* Fed.R.Civ.P. 10(c); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). The Complaint incorporates by reference the Home Inspection Authorization Agreement into which the parties entered and the report prepared by defendant pursuant to that agreement. Accordingly, these documents will be considered by this Court in the disposition of defendant's motion.

### II. *The Three–Year Statute of Limitations for Nonmedical Malpractice*

The Complaint alleges that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between plaintiffs, residents of New York, and defendant, a New Jersey corporation. The parties agree that New York law applies to the dispute.

The issue here is whether a home inspector is entitled to the three-year statute of limitations set forth in N.Y.C.P.L.R. § 214(6). The statute, as amended in 1996, states, in relevant part:

> The following actions must be commenced within three years:
>
> \*    \*    \*    \*    \*    \*
>
> 6. an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort . . . .

N.Y.C.P.L.R. § 214(6).

The statute does not define "malpractice." New York's appellate courts have not delineated the criteria for determining the types of professional services which qualify for the three-year statute of limitations, but have applied N.Y.C.P.L.R. § 214(6) to attorneys, accountants, architects and engineers. *See Port Authority of N.Y. and N.J. v. Evergreen Int'l Aviation, Inc.*, 179 Misc.2d 674, 678, 686 N.Y.S.2d 269 (N.Y.Sup.Ct.1999) and cases

cited therein; *New York and Presbyterian Hosp. v. Tishman·Constr. Co.,* 180 Misc.2d 193, 195, 688 N.Y.S.2d 424 (N.Y.Sup.Ct. 1999). At least one New York lower court used the definition of malpractice from Black's Law Dictionary as the starting point of the court's analysis of whether a defendant can invoke the three-year statute of limitations. *See Port Authority of N.Y. and N.J.,* 179 Misc.2d at 677, 686 N.Y.S.2d 269. Black's Law Dictionary defines malpractice as " '[p]rofessional misconduct or unreasonable lack of skill' " and the " '[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession.' " *Id.* (*citing* Black's Law Dictionary 959 (6th ed.1990)).

The *Port Authority* court listed the following factors to be considered in determining whether a given activity constitutes the practice of a profession:

> (1) a long-term educational background generally associated with a degree in an advanced field of science or learning; (2) the requirement of a license which indicates sufficient qualifications have been met prior to engaging in the occupation; (3) the control of the occupation by standards of conduct, ethics and malpractice liability; and (4) the barrier to carrying on the occupation as a corporation.

*Id.* at 678, 686 N.Y.S.2d 269; *see also New York and Presbyterian Hosp.,* 180 Misc.2d at 196, 688 N.Y.S.2d 424.

Although the parties have not directed our attention to, and we have not found, any case in which a home inspector sought to invoke the three-year statute of limitations set forth in section 214(6), the Supreme Court of New York County held that an "exterior walls consultant" was not subject to the professional malpractice statute of limitations in *New York and Presbyterian Hospital.*

There, the defendant contracted with a hospital to "supplement the Architect's skill in design, detailing and specification preparation, and the Contractor/Manager's skill in building construction." *Id.* at 194, 688 N.Y.S.2d 424. The court, applying the four factors set forth above, held that although the defendant's consulting practice "appears to involve work associated with the professions of both architecture and engineering," the defendant was not entitled to the shorter limitations period. *See id.* at 196–97, 688 N.Y.S.2d 424.

The court's decision turned on the fact that the defendant was an ordinary business corporation rather than a licensed professional service corporation under the New York Business Corporation Law. *Id.* The court noted that N.Y. Bus. Corp. Law. § 1501 *et seq.* "sets forth the exclusive means by which professionals may practice in the corporate form, and a corporation not licensed to render professional services may not do so." *Id.* at 196, 688 N.Y.S.2d 424; *see also Charlebois v. J.M. Weller Assocs., Inc.,* 72 N.Y.2d 587, 592, 535 N.Y.S.2d 356, 531 N.E.2d 1288 (N.Y.1988). The court continued:

> Thus, defendant's "exterior wall consulting practice" is not subject to the educational, regulatory and disciplinary mechanisms of the state's licensing authority .... [T]here was clearly no barrier to [defendant's] carrying on its business as a corporation, because that is precisely what it did. Defendant thus availed itself of the usual protections of the corporate form, rather than subjecting its employees to personal professional liability under BCL 1505. Having elected to secure that advantage, defendant should not be allowed to enjoy an additional benefit which was intended, in part, to compensate professionals for their inability to limit their liability through incorporation.

*New York and Presbyterian Hosp.,* 180 Misc.2d at 196–97, 688 N.Y.S.2d 424.

Like the defendant in *New York and Presbyterian Hospital,* defendant here has determined to avail itself of the protections of the corporate form rather than expose

its employees to professional liability. Although it appears that defendant adhered to industry standards of practice and a code of ethics set forth by the American Society of Home Inspectors, (see Complt., Ex. A.), defendant was not subject to a licensing requirement.

■ Defendant states in its reply memorandum in support of its motion to dismiss that Bruce Rickard, the president of defendant Allspect, is a licensed professional engineer and that "he has a bachelor of science degree and a masters degree in mechanical engineering; he is a licensed professional engineer in New York, New Jersey and Illinois; he is a licensed building inspector for residential commercial structures in New Jersey and a member of the American Society of Home Inspectors." (Def. Reply Mem. Supp. Mot. Dismiss at 1.) First, we may not consider these factual allegations. "[A] district court errs when it considers affidavits and exhibits submitted by defendants ... or relies on factual allegations contained in legal briefs or memoranda ... in ruling on a 12(b)(6) motion to dismiss." *Friedl v. City of New York*, 210 F.3d 79, 2000 WL 353210, at *3 (2d Cir. April 4, 2000) (internal citations and quotations omitted).

■ However, even if we were to consider that defendant's president is a licensed engineer, this would not entitled defendant to the benefit of the three-year statute. Although engineers when acting individually get the benefit of that statute, *see IFD Constr. Corp. v. Corddry Carpenter Dietz and Zack*, 253 A.D.2d 89, 91–92, 685 N.Y.S.2d 670 (N.Y.App.Div.1999), Rickard was not sued in his personal capacity. The defendant in the instant action is an unlicensed corporation that performs home inspections, not engineering services. Nowhere in the report defendant prepared, nor in the agreement between plaintiffs and defendant, does defendant purport to perform engineering services. Rickard signed the agreement as an "Inspector." (*See* Complt., Ex. B.)

In the Supplementary Practice Commentaries to C.P.L.R. § 214(6), Professor Vincent C. Alexander observes:

The demarcation between professional and conventional businessperson, which will in turn determine whether the alleged wrongdoing is malpractice or simply a breach of contract for services, will be shadowy in many cases. The strict, four-factor test applied by the *Port Authority* and *New York and Presbyterian Hospital* courts, however, seems an appropriate approach to the problem. The Legislature presumably sought to confer the protections of CPLR 214(6) on a relatively small group of defendants. Otherwise, it would have shortened the six-year breach of contract period to three years for all contracts for services.

Practice Commentaries N.Y.C.P.L.R. 214(6).

This Court therefore concludes that the three-year statute of limitations of N.Y.C.P.L.R. § 214(6) is inapplicable to this action. The six-year statute of limitations applicable to actions for breach of contract set forth in N.Y.C.P.L.R. § 213(2) will be applied. *See Video Corp. of Am. v. Frederick Flatto Assocs., Inc.*, 58 N.Y.2d 1026, 1028, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (N.Y.1983) ("[A]n action for failure to exercise due care in the performance of a contract insofar as it seeks recovery for damages to property or pecuniary interests recoverable in a contract action is governed by the six-year contract Statute of Limitations (CPLR 213, subd. 2).").

The instant action was filed on January 5, 2000, about three years and four months after defendant issued its report and well within the six-year statute of limitations.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss the complaint is denied.

SO ORDERED.