**BEACON HILL CBO II, LTD. and Beacon Hill CBO III, Ltd., Plaintiffs,**

v.

**BEACON HILL ASSET MANAGEMENT LLC (f/k/a Beacon Hill Asset Management Limited Liability Company), Defendant.**

**No. 02 Civ.9229 GEL.**

United States District Court, S.D. New York.

Dec. 4, 2003.

See also 249 F.Supp.2d 268.

Steven Wolowitz, Mayer, Brown, Rowe & Maw, New York City (Richard A. Spehr, Henninger S. Bullock, on the brief), for plaintiffs Beacon Hill CBO II, Ltd. and Beacon Hill CBO III, Ltd.

Joel M. Miller, Miller & Wrubel P.C., New York City (Charles R. Jacob III, Teresa A. Gonsalves, on the brief), for defendant Beacon Hill Asset Management LLC (f/k/a Beacon Hill Asset Management Limited Liability Company).

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiffs Beacon Hill CBO II, Ltd. ("CBO II") and Beacon Hill CBO III, Ltd. ("CBO III") (collectively, the "Issuers" or "plaintiffs") initiated this lawsuit on November 19, 2002, seeking to terminate their relationship with defendant Beacon Hill Asset Management LLC ("Beacon Hill" or "Portfolio Manager" or "defendant"), the entity that Issuers had contracted with to manage a certain portfolio of assets that Issuers own. Essentially, the First Amended Complaint, filed on March 21, 2003, alleges that the Portfolio Manager breached its fiduciary duties to the Issuers, and violated various provisions of the portfolio management agreements governing the relationship between the parties. The Portfolio Manager moves the Court to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), and alternatively to dismiss it pursuant to Fed.R.Civ.P. 52(a), 58 and 65(a)(2). For the reasons that follow, the motion will be denied.

## BACKGROUND

For purposes of this motion to dismiss, the facts alleged in the complaint must be taken as true. The dispute involves two securitization transactions (known as collateralized bond obligations) in which the

Issuers pooled certain assets and issued securities ("Bonds") to various investors. The assets which serve as collateral for the Bonds are pledged to a trustee bank under an indenture agreement. The value of the Bonds is dependent upon, *inter alia,* the value of the underlying pool of assets. The Issuers contracted with defendant Beacon Hill to manage the purchase, sale and monitoring of the underlying pool of assets, and to assist in the marketing and sale of the Bonds to investors. The relationship between the parties is defined in the portfolio management agreements entered into on July 19, 2001, and August 7, 2002 ("Portfolio Management Agreements" or "Agreements").[1]

Under the terms of the Agreements, Beacon Hill as Portfolio Manager has discretion to manage the assets within the limits established by the indenture. Section 13(a) of the Agreements provides for removal of the Portfolio Manager with cause if "the Portfolio Manager shall willfully and intentionally violate any provision of this Agreement or the Indenture applicable to it or shall have willfully and in bad faith breached any representation and warranty as of the date when such representation and warranty was made." In Section 7 of the Agreements, the Portfolio Manager agrees that subject to the indenture, it "shall not take, and shall use all commercially reasonable efforts to ensure that no action is taken, which ... (g) would adversely affect the interests of the Securityholders ... in any material respect." Additionally, the Agreements contain a "key man" provision, Section 13(g), which allows the Issuers to remove the Portfolio Manager if certain principals of Beacon Hill cease to be actively involved in managing the asset portfolio.

Plaintiffs allege that in October 2002, their confidence in the Portfolio Manager was "shattered" as the result of disclosures concerning the value of certain hedge funds (apparently otherwise unrelated to the subject of the instant litigation) managed by Beacon Hill (Am.Compl.¶ 4) as well as an ensuing SEC investigation of Beacon Hill. Plaintiffs also allege that the Portfolio Manager acknowledged in early November 2002 that as a result of the SEC investigation, two of Beacon Hill's principals who are identified as "key men" in the Agreements would no longer participate in managing the asset portfolios collateralizing the Bonds. (Am.Compl.¶ 7.)

Plaintiffs originally filed this lawsuit on November 19, 2002, and moved by order to show cause for various forms of relief. On that same date, the Court granted the temporary restraining order sought by plaintiffs prohibiting Beacon Hill from destroying any document or record relevant to this action or from collecting compensation in connection with the asset portfolios, or making any extraordinary payments from plaintiffs' assets or payments to defendant's principals or current or former affiliates ("TRO"). Plaintiffs also sought a preliminary and permanent injunction removing Beacon Hill in favor of a new portfolio manager designated by plaintiffs. After considering the parties' arguments in written submission and in three hearings, the Court vacated the TRO on December 19, 2002. Plaintiffs' request for a preliminary and permanent injunction ousting Beacon Hill as Portfolio Manager based on the breach of fiduciary duty claims was denied by an Opinion and Order of this Court dated January 22, 2003 ("January Order"). *Beacon Hill CBO II*

---

1. The 2001 Agreement pertains to CBO II, the 2002 Agreement pertains to CBO III, and the two Agreements are largely similar in substance and purpose. They are attached to the complaint as Exhibits B and C.

*Ltd. v. Beacon Hill Asset Mgmt. LLC,* 249 F.Supp.2d 268 (S.D.N.Y.2003).

The plaintiffs appealed the denial of the preliminary and permanent injunction to the United States Court of Appeals for the Second Circuit on February 19, 2003, and resolution of that appeal is pending.

## DISCUSSION

### I. *Standard for Dismissal under Federal Rule of Civil Procedure 12(b)(6)*

■ In the context of a motion to dismiss, the Court accepts "as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699–700 (2d Cir.1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York,* 143 F.3d 31, 36 (2d Cir.1998) (internal citations omitted). The "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (internal quotation marks and citations omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002), quoting *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

■ All reasonable inferences are to be drawn in the plaintiff's favor, which often makes it "difficult to resolve [certain questions] as a matter of law." *In re Independent Energy Holdings PLC,* 154 F.Supp.2d 741, 747 (S.D.N.Y.2001). The task of a court in ruling on a 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000), quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984).

### II. *Effect of the Prior Opinion*

■ Defendant requests that the Court enter findings of fact pursuant to Fed. R.Civ.P. 52(a), 58 and 65(a)(2), and enter judgment against plaintiffs on all counts because, defendant claims, the prior proceedings in this case concerning the preliminary and permanent injunction constituted a trial on the merits. But that mischaracterizes the prior proceedings. Whatever may have been originally contemplated, no trial-type hearing was ever held. The Court did not take evidence, resolve any issue of fact, or make any factual findings. Instead, consideration was expressly limited to the first two claims, which were the only claims on which plaintiffs based their application for a preliminary injunction, and analysis of those claims was based entirely on legal questions, accepting the facts as alleged in the complaint.[2] The Court rejected preliminary relief not because it made findings of fact adverse to plaintiffs, but because it rejected as erroneous plaintiffs' legal theory underlying the breach of fi-

---

**2.** Defendant's argument seems disingenuous at best, since it points to no occasion on which the Court decided any issue of fact. In fact, at the November 26, 2002, hearing, the Court specifically found that there is "no need for a trial or an evidentiary hearing of some sort" to decide the preliminary injunction, because the decision involved purely legal issues. (11/26/2002 Tr. 22:2–3.)

duciary duty claims in Counts I and II of the complaint, upon which plaintiffs had based their application. *Beacon Hill,* 249 F.Supp.2d at 272 (noting that, in the context of the preliminary injunction motion, the "parties disagree on the *purely legal question* of whether the equitable principle allowing for termination at will of a fiduciary relationship requires Beacon Hill to step down despite the provisions in the Portfolio Management Agreements that expressly require cause for termination") (emphasis added). Thus, the Court rejects defendant's request that the Court make findings of fact and enter judgment for defendant on all counts.

### III. *Counts One And Two*

■ As suggested by the preceding section, and as plaintiffs effectively concede, the logic of the Court's January Order dictates dismissal of Counts I and II. For reasons fully elaborated in the prior opinion, *id.,* at 277, these claims are without legal merit, and must be dismissed.

Plaintiffs argue, however, that dismissal at this stage will complicate and delay appellate proceedings by requiring them to take a new appeal, move to consolidate it with the prior appeal, and file new briefs. They point out that this activity will be largely pointless: since the issues pending before the Court of Appeals essentially encompass those in the motion to dismiss, if the Second Circuit affirms this Court's prior order, dismissal of Counts I and II will follow automatically, and if it reverses, any dismissal here would be vitiated, whether it has been made part of the pending appeal or not.

■ The logic seems inescapable. Were the entire complaint to be dismissed, consolidation with the earlier appeal for a single appellate review would be more efficient. However, for reasons set forth below, other counts will go forward in this Court whatever happens to Counts I and

II. Federal courts have inherent power to control the timing of proceedings "so as to maintain the orderly processes of justice." *Carlisle v. United States,* 517 U.S. 416, 438, n. 1, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), quoting *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 381–382, 55 S.Ct. 310, 79 L.Ed. 440 (1935). Accordingly, the Court will stay proceedings on Counts I and II pending resolution of plaintiffs' appeal of the January Order, with the expectation that those claims will be dismissed if the remaining claims are resolved before decision of plaintiffs' appeal.

### IV. *Counts Three and Four*

As noted above, the Court did not directly address Counts III through V in the January Opinion and Order. Defendant argues, however, that Counts III through IV are simply restatements, in different words, of the claims that the Court did reject. Defendant is mistaken. The issue addressed in the January Order is plaintiffs' claim that the defendant violated its fiduciary duty simply by failing to withdraw as Portfolio Manager once plaintiffs lost confidence in it. *Beacon Hill,* 249 F.Supp 2d at 270 n. 2. Count III, in contrast, asserts that defendant violated its fiduciary duty by its "systematic pattern of misconduct" (P. Mem.14), including activity which was the subject of an SEC complaint in November 2002, alleging that Beacon Hill materially overstated the actual value of hedge finds that it managed (Am.Compl.¶ 36); Beacon Hill's failure to apprise plaintiffs of the SEC's investigation (Am.Compl.¶ 30); and Beacon Hill's decision not to withdraw as Portfolio Manager when doing so would have been in plaintiffs' best interest (Am.Compl.¶ 35). Essentially, Counts I and II rested on the theory that defendant's mere failure to withdraw on plaintiffs' demand in itself constituted a breach of fiduciary duty, thus creating a unilateral right on the part of

plaintiffs to dismiss defendant as Portfolio Manager for its own purely subjective reasons, despite Agreements spelling out conditions of discharge. Count III, in contrast, contends that defendant engaged in specific actionable misconduct, judged on an objective standard.

■ It is undisputed that defendant owes fiduciary duties to plaintiffs, *Beacon Hill*, 249 F.Supp.2d at 273. The facts alleged in support of Count III, if true, could support a factfinder's conclusion that defendant breached that duty. Defendant makes no real attempt to argue to the contrary, relying primarily on the erroneous claim that the Court's prior opinion requires dismissal.[3] Accordingly, the motion to dismiss Count III must be denied.

■ Much the same is true of Count IV. The gravamen of that claim is that Beacon Hill may be terminated for cause pursuant to Section 13(a) of the Management Agreements because, plaintiffs allege, Beacon Hill breached Section 7 of the Agreements by failing to withdraw as Portfolio Manager when it knew its failure to withdraw would adversely affect plaintiffs' interests. Essentially, this is a claim for contract breach, and was not addressed in the January Order, which only addressed the narrow issue of whether Beacon Hill could be summarily dismissed once plaintiffs lost confidence in it. In Count IV, by contrast, plaintiffs allege that defendant engaged in fraud and thus damaged its reputation and consequently its ability to effectively manage plaintiffs' asset portfolio, thus violating the obligation pursuant to Section 7(g) to "use all commercially reasonable efforts to ensure that no action is taken, which ... would adversely affect the interest of [plaintiffs] in any material respect."

Here again, Counts I and II are based on the theory, rejected in the Court's prior opinion, that the plaintiffs are entitled to summarily terminate the relationship with defendant because they subjectively lost faith in it, even though the Agreements do not specifically provide for termination on that ground. *Beacon Hill*, 249 F.Supp.2d at 270. Count IV, in contrast, is based on the theory that defendants took actions which objectively harmed plaintiffs' interests, thus violating a contractual provision and presenting cause for termination of the relationship. While the Court expresses no opinion as to the merits of this claim, the facts alleged could support a factfinder's conclusion that Beacon Hill violated its contractual obligation to refrain from taking action that would adversely affect plaintiffs, and it therefore may not be dismissed.

## V. *Count Five*

Count V seeks a declaration that plaintiffs may dismiss the Portfolio Manager because "key men" named in Section 13(g) of the Management Agreements ceased participating in the management of plaintiffs' asset portfolio, thus triggering the Section 13(g) requirement that Beacon Hill

---

**3.** Defendant claims that the Management Agreements "expressly prohibit the [plaintiffs] from seeking to impose liability on [it]" (D.Mem.15) (emphasis omitted) citing Section 10(a) of the Agreements, which provides in relevant part that "[t]he Portfolio Manager assumes no liability under this Agreement other than to render the services called for hereunder ... in good faith...." Defendant argues that plaintiffs have not alleged the kind of "bad faith, willful misconduct or gross negligence in the performance, or reckless disregard, of the duties of the Portfolio Manager" that alone permits liability under Section 10(a). However, the complaint is replete with allegations that the Portfolio Manager acted in bad faith by engaging in alleged fraud with respect to other entities it managed, failing to inform plaintiffs of the SEC investigation, and knowingly failing to consider plaintiffs' best interests. Thus, plaintiffs have alleged bad faith that could permit a factfinder to hold defendant liable under Section 10(a).

propose acceptable replacements for the key men. Section 13(g) provides that cause for termination of the relationship exists should a certain combination of two out of three key men cease to manage the portfolio, unless Beacon Hill designates defined acceptable replacements for the key men within a specified time. Defendant makes three arguments, all meritless, in support of its motion to dismiss this claim.

■ First, defendant argues that plaintiffs conceded the lack of merit of the "key man" claims by not relying on those claims at the preliminary injunction stage. (D.Mem.20, n. 5). Plaintiffs did no such thing. Failure to seek a preliminary injunction on a claim does not concede that the claim lacks merit. Plaintiffs relied only on Counts I and II in the preliminary injunction proceedings because those claims were based on purely legal issues and did not require discovery; accordingly, if those claims had merit, relief could be obtained without elaborate proceedings.

■ Second, defendant argues that plaintiffs fail to state a claim for breach of the "key man" provision because defendant allegedly had a contractual right to "cure" any such breach within thirty days, and plaintiffs have not alleged that defendant failed to so cure. (D.Mem.21.) This argument does not support dismissal of the claim because it requires the Court to import the cure provision of Section 13(b) into the key man provision of Section 13(g), when there is no indication that the parties intended to insert such a cure provision into Section 13(g).

Section 13 in its entirety governs "Termination for Cause" and defines "cause" as any one of seven specific events. Section 13(b) provides that cause for termination exists if the Portfolio Manager fails to cure a material breach of the Agreements within thirty days. Section 13(g) provides that cause for termination exists when Beacon Hill's key men cease to manage the portfo-

lio and the Issuers inform a certain class of certificate holders of that fact, unless acceptable replacements are designated by Beacon Hill within a specified period. Therefore, under the Agreements, failure to cure a material breach within thirty days is one ground for termination, and withdrawal of key men without designation of acceptable replacements is a *different* ground for termination. Defendants ask the Court to interpret withdrawal of the key men as a material breach, and thus add the 30–day cure provision of Section 13(b) to the requirements already set forth in Section 13(g). However, the parties specifically set forth the circumstances constituting cause for termination regarding the key men, and could have inserted a cure provision, yet did not. *See Charter Realty & Development Corp. v. New Roc Assocs., L.P.*, 293 A.D.2d 438, 439, 739 N.Y.S.2d 456 (2d Dep't 2002) ("a court should not, under the guise of contract interpretation, imply a term which the parties themselves failed to insert . . .") Since the Agreements define Sections 13(b) and 13(g) as separate causes for termination, they must be interpreted independently, and the cure provision of the first will not be inserted into the second. In other words, in order to state a cause of action for breach of the key man provision of Section 13(g), plaintiffs are not required to allege that defendant failed to cure the breach within thirty days.

■ Third, defendant claims that the key men *are* still managing plaintiffs' asset portfolio, and that the contrary representations alleged in the complaint were the result of a brief period of "confusion." (D. Reply 10.) Whether or not this is true, and whether or not any withdrawal of the key men that may have occurred constituted a material breach, are questions to be decided by a finder of fact. At this point, the allegations in the complaint must be

taken as true, and the complaint alleges that plaintiffs were told that certain key men had ceased to be involved in management of the portfolio. Defendant challenges the sufficiency of this allegation on the grounds that plaintiffs assert only that they had been *told* that key men had withdrawn from portfolio management, not that the key men *actually had* withdrawn. However, plaintiffs' scrupulousness in pleading the exact state of their knowledge does not defeat their claim. Plaintiffs allege that they had been informed by John Irwin, an authorized agent of defendant, that he and Tom Daniels, named as key men in the Management Agreements, were no longer involved in the portfolio's management. (Am.Compl.¶ 31.) Discovery will flesh out the facts concerning whether Irwin actually made that representation, and if so whether he was correct or mistaken, or correct at the time but overtaken by subsequent events. Plaintiffs have adequately alleged substantial reason to believe that key men ceased to manage the portfolio as of October 25, 2002. The allegations are thus sufficient to allow discovery on this claim to proceed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is denied as to Counts III through V. Entry of an order dismissing Counts I and II is stayed pending resolution of plaintiffs' appeal of the denial of preliminary relief. Defendant's motion to make findings of fact and enter judgment in its favor on all counts based on the Court's prior opinion is denied. The parties are directed to proceed with discovery on Counts III through V; discovery is to be completed no later than March 31, 2004. The Clerk of Court is respectfully directed to close out defen-

dant's motion (Docket Number 29) for purposes of all statistical reports.

SO ORDERED.