OPINION OF THE COURT
Bellacosa, J.
Claude and Lesley Charlebois contracted with J.M. Weller Associates, Inc. (Weller Assocs.) for a new warehouse and an addition to an existing building from which the Charleboises operate their beer distributorship business. The contract, a standard agreement of the Associated General Contractors of America, called for a construction team consisting of contractor Weller Assocs., the owners Charleboises, and an architect-engineer, James M. Weller, P.E.
After construction was started, disputes (not the subject of the present action) arose between the parties over cost, design, *591 building code compliance, and other alleged defects. The Charleboises refused to make further payment, allegedly leaving $600,000 in construction costs owed, until the disputes were resolved to their satisfaction. Pursuant to the contract, Weller Assocs. demanded arbitration. The arbitration proceeding was adjourned after the Charleboises instituted this action seeking a declaration that their contract was invalid as against public policy because it violated Education Law §§ 7202 and 7209 (4). The Charleboises also sued James M. Weller, P.E., an action not n,ow before us.
On cross summary judgment motions, the lower courts ruled in favor of Weller Assocs. that the contract was valid and the appeal is now before us on a two-Justice dissent at the Appellate Division. We affirm because this contract, with its express requirement for a separately retained licensed professional engineer to perform the design function, does not violate the pertinent Education Law licensing protections or the public policy which underlies them.
Supreme Court found that the contract required the engineering services by James M. Weller, P.E., that he was indisputably a duly licensed professional engineer, and that the policy sought to be protected by the Education Law provisions was adequately addressed by contractor Weller Assocs. engaging a properly licensed person, James M. Weller, P.E. The contract provided that the services of an "Architect/Engineer will be furnished by the Contractor pursuant to an agreement between the Contractor and the Architect/Engineer;” that "all Architectural & Structural Engineering services are provided by James M. Weller P.E.;” and that the contractor would "furnish the architectural, engineering and construction services”.
The Appellate Division majority, in affirming, added: "[defendant [Weller Assocs.] herein did not agree to perform architectural or engineering services; rather, plaintiffs and defendant agreed that a licensed third party would perform those services” (136 AD2d 214, 216). The dissent countered that a design-build contract of this kind would permit the contractor to become a "package dealer,” resulting in the frustration of the public policy behind the Education Law licensing requirement.
We are faced with a narrow question of whether this contract, entered into between the Charleboises and Weller Assocs., the latter being an unlicensed business corporation *592 building contractor, should be declared invalid as against public policy when the parties concomitantly provided that the project design had to be fulfilled by the builder by engaging a specified licensed engineer. We hold that the contract is not void because, under the contractual arrangements of the parties, acknowledged by the lower courts- and verified independently in the record by plaintiffs themselves and by their separate lawsuit against James M. Weller, P.E., this does not constitute the unauthorized practice of engineering by the builder. Critically here, the engineer actually engaged to do the professional work is inescapably subject to the educational, regulatory and punishment mechanisms of the licensing entity, the State Education Department, without any necessity for him to have been a formal, technical signatory to the contract (Education Law §§ 7205, 7206, 6508, 6509; 8 NYCRR 29.1, 29.3).
Education Law § 7202 provides that "[o]nly a person licensed or otherwise authorized under this article shall practice engineering or use the title 'professional engineer’ ”. Only a professional corporation exclusively comprised of persons licensed to provide designated professional services may contract to engage in the practice of engineering (see, Education Law § 7209 [4]; Business Corporation Law art 15). Such professional corporations shall not "engage in any business other than the rendering of the professional services for which it was incorporated” (Business Corporation Law § 1506). Weller Assocs. is a business corporation, not a professional corporation, and as such is not qualified to practice engineering nor subject to the regulatory or disciplinary oversight of the State Education Department. Conversely, James M. Weller, P.E., is prohibited from engaging in the contracting trades while employing that professional suffix.
If defendant Weller Assocs. either contracted itself to engage or actually engaged in the practice of engineering, then the licensing proscription would surely have been violated with grave contractual and criminal consequences (see, e.g., Education Law § 6512). We recognize, of course, that when a : record establishes substantial performance of a contract, the absence of an appropriate license bars recovery on an agreement, as "the purpose of the regulatory scheme is to protect the public health and safety” (Richards Conditioning Corp. v Oleet, 21 NY2d 895, 896; see also, Johnston v Dahlgren, 166 NY 354; and People ex rel. Nechamcus v Warden, 144 NY 529). "So strict has been judicial construction of the statutory *593 requirement through concern for the public health and welfare that the requirement may not be satisfied by employing or subletting” the work to an appropriately licensed person (Vitanza v City of New York, 48 AD2d 41, 44 [Marcus G. Christ, J.] [citations omitted], affd on opn below 40 NY2d 872). Where the company performing the work is not licensed, it is precluded from recovering for the work performed either pursuant to contract or in quantum meruit (see, Richards Conditioning Corp. v Oleet, supra, at 896-897; Hammerman v Jamco Indus., 119 AD2d 544, 545; George Piersa, Inc. v Rosenthal, 72 AD2d 593).
On the other hand, these cases do not erect an absolute or per se rule. For example, an exception to the all-or-nothing decisional sanction tied to this statutory licensing prerequisite was recognized early in Bronold v Engler (194 NY 323). There, a builder who himself lacked a statutorily required license was allowed to contract for completion of a structure, including work requiring licensure, if a properly licensed party was retained to perform the regulated work. The builder "would in such case in no fair sense be conducting the [licensed] 'trade, business or calling’ * * *. It would be the mere incident of a larger work” (id., at 325 [emphasis added]; Vitanza v City of New York, supra, at 45).
In the instant case, application of the pertinent principles satisfies the public policy concerns underlying Education Law §§ 7202 and 7209 because of the contract’s express requirement here that the contractor engage a specified licensed person or professional corporation to perform the tasks for which the law specifically requires a license (see, Vereinigte Osterreichische Eisen und Stahlwerke v Modular Bldg. & Dev. Corp., 64 Misc 2d 1050, mod on other grounds 37 AD2d 525). In that case, the court said:
"It cannot be * * * that an entire contract comprehending many services to be performed, including those calling for the services of licensed professionals, can be stricken because the party furnishing the services is not itself a licensed professional.
"To hold otherwise would mean that * * * builders and general contractors would likewise be incapable of enforcing their contracts because architectural and engineering skills are incidentally involved. * * *
"The rights sought -to be protected by the statute are adequately covered when the contractor, manufacturer or *594 builder engages a properly licensed person to perform those tasks which the law specifies call for certified skills.” (Id., at 1051.)
Plaintiffs-appellants, the dissenting Justices at the Appellate Division, and the dissenters in this court place significant reliance on American Store Equip. & Constr. Corp. v Dempsey’s Punch Bowl (174 Misc 436, affd without opn 258 App Div 794, affd without opn 283 NY 601). There, an unlicensed business corporation contracted for itself to prepare architectural plans and then for itself to remodel a building according to those plans. We, of course, agree that this direct, otherwise unsanctionable, violation of public policy warranted withholding recovery from the offending contractor, but it has no persuasive or binding force on the very different commercial transaction and contractual relationships in this case.
Here, the contractual scheme survives the statutory and precedential prohibitions governing professional occupations for which a license is necessary, and specifically requires an independent licensee to perform the regulated services. Weller Assocs. did not agree to draft the designs for which an architectural or engineering license would be required as American Store did in the case so heavily relied upon by appellants. Instead, the design functions were contracted for and actually performed by a named licensed engineer, as the Charleboises agreed and expected under their contract. Pursuant to that arrangement, James M. Weller, P.E., was not acting in the capacity of an employee of the business corporation, but acted as a professional licensed engineer obligated by contract to exercise his professional judgment in the interests of the public health and welfare, and independent in that sense of unlicensed oversight. In fulfilling the independent professional role in this case, James M. Weller, P.E., was also subject to the plenary regulation of the State Education Department. Indeed, insofar as the professional obligation owed by Weller, P.E., is derived from the contract itself, at issue here, the professional services could not have been performed by Weller Assocs. and it was the independent professional judgment of James M. Weller, P.E., which flowed directly to the Charleboises. This is sufficiently consistent with the public policy sought to be served by the statute and the cases, without the ultimate ..sanction of voiding an otherwise valid and fulfilled contract.
Neither a fair reading of the contractual arrangement nor *595 the regulatory scheme designed to protect an important public policy would support a view that Weller Assocs. agreed for itself to engage or actually engaged in the practice of engineering. That is what the Education Law forbids under these circumstances. The design in this case as part of the over-all project was performed lawfully by a licénsed professional.
Even if a violation were to be hypothesized for the sake of argument, the public policy that underlies the statute would not be furthered by complete avoidance of this contract. It cannot be overlooked that the Charleboises did not allege anywhere or argue anywhere, as is their burden as plaintiffs seeking to void the contract, the nonexistence of the expressly contemplated implementation by James M. Weller, P.E. Indeed, they virtually concede that James M. Weller, P.E., actually completed the work. Surely they would have, had that been the state of affairs as the dissent implies. Also, respondent urges that the Charleboises’ attorney prepared this contract; the record shows that the Charleboises have reaped the fruits of that contract by currently occupying the completed structures and operating their business from it; and they now seek to disaffirm that very contract and be forgiven $600,000 in payments for services and work completed and delivered to them.
A further response to the dissent is that the absolutism of its approach to this case as to the public policy enforcement mechanism ignores the plain and concededly commercial realities of the arm’s length transaction between the Charleboises and Weller Assocs., and would impose a disproportionate and unnecessary remedy and price. This overly broad interpretation would also unnecessarily have the effect of disenfranchising a fully regulated professional engineer from participating in a commercial transaction of this nature. In this case, the regulatory sanctions reinforced by the potential civil malpractice liability quite complementarily and proportionately protect the underlying public policy and certainly more than adequately protect the plaintiffs-appellants Charleboises.
Finally, forfeitures by operation of law are strongly disfavored as a matter of public policy and the Charleboises’ efforts to use that concept as a sword for personal gain rather than a shield for the public good should not be countenanced in the name of the Education Law public policy, slavishly applied. The legislative objective, after all, is professional performance —a matter of substance — not the vehicle of professional performance — a matter of form.
*596 The remaining arguments raised by appellants are either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be affirmed, with costs.