OPINION OF THE COURT
Anthony T. Kane, J.
In this CPLR article 78 proceeding, petitioners General Building Contractors of New York State, Inc. (GBC) and New York State Steel Fabricators Association, Inc. (SFA) seek an order invalidating Rule 29.3 (b) (Rule) (8 NYCRR) of the Rules of the Board of Regents, relating to the delegation of professional design work. Petitioners claim that said Rule violates the letter and intent of the Education Law, violates the letter and intent of the General Municipal Law, and contravenes the public policy considerations underlying the licensing requirements of the Education Law. In turn, respondents have interposed the following objections in point of law to the petition: the petition is untimely commenced in that the petitioners’ four-month Statute of Limitations began to run on May 15, 1996, the date of published notice of adoption of amended Rule 29.3 (b), and the petitioners did not commence this proceeding until October 1, 1996; and that the petition fails to state a cause of action. The New York State Society of Professional Engineers, Inc. (NYSSPE) in support of the position taken by respondents in the instant proceeding has filed an amicus curiae brief.
The petitioners had prefatorily sought a declaration that a contractor acting as intermediary in a design delegation was not performing design work but that request for relief was dismissed by the court in a decision and order dated May 9, 1997. Respondents’ motion to dismiss the entire proceeding on the basis of lack of standing was also denied.
As a preliminary matter, the court finds that the instant proceeding challenging the validity of Rule 29.3 (b) was timely commenced within the four-month Statute of Limitations governing CPLR article 78 proceedings. The court does not find, as respondents argue, that Rule 29.3 (b) became “final and binding” by publication of the notice of adoption in the New York Register on May 15, 1996. Rather, it is the court’s *924 opinion that Rule 29.3 (b) became “final and binding” for the purposes of the Statute of Limitations on June 14, 1996; the date on which it became effective (see, Matter of Hospital Assn. v Axelrod, 164 AD2d 518, 524 [3d Dept 1990]).
Briefly, Rule 29.3 (b) of the Board of Regents amends the definition of “ [u] nprofessional conduct” for the licensed professions of engineering, land surveying, architecture and landscape architecture to expressly exclude, under certain prescribed conditions, the delegation of design work from one licensed professional to another licensed professional through an intermediate entity. “Delegator/delegatee” is defined by the Rule as “design professionals” (8 NYCRR 29.3 [b] [3] [i]); “intermediate entity” is defined by the Rule as “typically a contractor or subcontractor”. (8 NYCRR 29.3 [b] [3] [ii].)
Essentially, petitioners not-for-profit corporate trade organizations whose members include contractors, construction managers and steel fabricators that conduct business throughout New York, contend that the Rule authorizes licensed professionals to “utilize contractors and subcontractors, often against their wishes, as integral participants in the performance of professional design work that they are neither licensed nor qualified to perform” (petitioners’ reply mem of law, at 2). Conversely, respondents claim that the amended regulation is neither violative of State law nor public policy and characterizes the Rule as a “very thoughtful and reasoned approach” which accommodates “both public safety considerations and the flexibility provided by delegation in situations requiring special expertise or promoting competitive bidding” (respondents’ mem of law, at 8). For its part, the NYSSPE supports respondents’ position and contends that the Rule should be upheld as it “represents one such balancing effort that accurately reflects the true nature of the design and construction environment” (NYSSPE amicus curiae brief, at 2).
As enunciated by the Court of Appeals in Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal (76 NY2d 325, 328 [1990]), the standard of review for a challenge to a regulation is a “high one: ‘The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation “is so lacking in reason for its promulgation that it is essentially arbitrary” ’ [citations omitted].” However, “[a]dministrative agencies ‘ “have no authority to create a rule out of harmony with the statute” ’ ” (State Div. of Human Rights v Genesee Hosp., 50 NY2d 113, 118 [1980], quoting Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480-481 [1978]).
*925 Applying these principles to the issues raised by petitioners, it cannot be said that Rule 29.3 (b) is either irrational or does not square with the intent of the Education Law and the General Municipal Law. Unquestionably, the issue of design delegation had been the focus of discussion among the State Education Department, the contractors, and the design professionals (architects and engineers) for some time prior to the promulgation of Rule 29.3 (b). According to respondents, prior to the 1996 amendment of Rule 29.3 (b), Rule 29.3 was silent on this particular issue and thus there arose a need for clarification regarding delegation of design work to another licensed professional designer through an unlicensed third party, such as a contractor.
In 1990 through 1991, respondents contend that GBC, one of the petitioners herein, complained to the State Education Department about design delegation by primary designers claiming that the practice was compelling them to arguably illegally engage in the practice of a licensed profession. In turn, architects and engineers argued that due to evolving technological changes, the challenged practice had been common within the construction industry for some time.
Subsequent to this ongoing discussion, Henry Fernandez, Deputy Commissioner for the Professions, State Education Department, issued a memorandum to all design professionals in architecture, engineering, land surveying and landscape architecture, the purpose of which was to “inform and remind all licensed design professionals that the practice of delegating design responsibility to unauthorized firms constitutes unprofessional conduct under the Rules of the Board of Regents and New York State Education Law” (petition, exhibit B). Mr. Fernandez continued by stating, inter alia, that: “[t]he complexities of modern construction, and the new techniques and materials which are being incorporated into construction, require that the skills of the professional be applied throughout the construction process. While the expertise of specialists may be necessary during both the design and construction phases, it is the responsibility of the principal design firm to coordinate these efforts and be sure that the finished product meets all the design requirements, and functions properly and safely as an integrated system.”
In conclusion, Mr. Fernandez noted that pursuant to the Education Law and the Rules, an authorized person or firm is prohibited from delegating professional design responsibility and liability to an unauthorized person or firm such as a *926 construction contractor, or through an unauthorized person or firm to a third person or firm, regardless of whether the third party is authorized to provide professional services.
The Fernandez memorandum[1] engendered a much heated debate among design professionals and contractors and its validity was challenged in an article 78 proceeding (see, Matter of Rubin v New York State Educ. Dept., 210 AD2d 550 [3d Dept 1994]) in which the Court held that while said memorandum was informative, it nonetheless was a “ ‘nonconclusive, nonbinding guideline to be weighed along with other factors’ ” (supra, at 552). The court thus declines to place as much emphasis on said memorandum as petitioner does as the Appellate Division, Third Department, considered it neither a rule nor regulation.
Succinctly stated, Rule 29.3 (b) (2) (i) provides that where a licensed professional delegates work limited to that which is “ancillary” to the main project components to another licensee through an unlicensed third party, such delegation is not considered the performance or practice of professional design work and therefore not unprofessional conduct. Petitioners, however, argue that when a contractor or subcontractor acts in accordance with Rule 29.3 (b), he or she must engage in certain activities, such as supervising the delegatee’s activity to ensure compliance with the contract which, in petitioner’s opinion, constitutes the practice of design work. Petitioners point out that under the Education Law, general business corporations are prohibited from the practice of design professions, with limited exceptions. Under Rule 29.3 (b), the intermediate entity is compelled, petitioners assert, to engage in the practice of a design profession simply because, under the Rule, the contractor or subcontractor has no real choice if either the licensed professional requires the intermediary to retain a secondary licensee to complete certain design work omitted from the plans or if a change order is issued during construction which requires a contractor or subcontractor to employ the services of a licensed professional. If the contractor or subcontractor re *927 fuses to accept the role as an intermediate entity, in the first instance, he or she may be excluded from bidding or working on a particular project, or, in the second instance, face termination for failing to comply with a change order.
However, the court finds this contention of petitioners without merit for several reasons. Even petitioners concede that there is nothing explicit within the at-issue Rule which forcibly requires a contractor or subcontractor to assume the role of an intermediate entity; the Rule simply provides guidelines when and if design delegation is chosen. Moreover, as demonstrated by the affidavit submitted by Barbara J. Rodriguez, Executive Vice-President and Chief Executive Officer, American Institute of Architects (AIA) New York State,[2] Contractors of America (AGC) endorsed on October 1, 1997 the 1997 edition of A.201, General Conditions of the Contract for Construction which contains a provision permitting design delegation under terms similar to those found in Rule 29.3 (b). While certainly not dispositive of this issue, this endorsement gives credence to respondents’ and the NYSSPE’s argument that the amended rule is consistent with what has been the customary practice in the building industry. Just as Rule 29.3 (b) expressly provides that each licensed designer is liable for his or her own design work, so it is under A.201 which states, in part, that “[t]he Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents” (Rodriguez affidavit, exhibit A). Given this, it cannot be said that the intermediate entity will become forcibly entangled in alleged proscribed behavior.
What the court does find controlling, notwithstanding petitioners’ arguments to the contrary, is the Court of Appeals decision in Charlebois v Weller Assocs. (72 NY2d 587 [1988]) which involved a “design-build” contract. Briefly, the narrow issue presented in Charlebois centered on whether a construction contract between an owner and a contractor, who was neither a licensed architect nor a licensed engineer, whereby the contractor agreed not only to perform the construction of the project but also be responsible for furnishing the design, was void as against public policy. In affirming the Appellate Division, the Court of Appeals found that “the contractual scheme survives the statutory and precedential prohibitions governing professional occupations for which a license is necessary, and *928 specifically requires an independent licensee to perform the regulated services” {supra, at 594). Although it is true that the contractor in Charlebois was not used as an intermediate entity to facilitate the delegation of design work, it does not minimize the significance of the Court of Appeals decision in this proceeding. The Charlebois Court made it quite clear that the licensee was obligated by contract to exercise his “professional judgment in the interests of the public health and welfare, and independent in that sense of unlicensed oversight” (Charlebois v Weller Assocs., supra, at 594 [emphasis added]). Thus, this court finds the precedential value of Charlebois grounded not so much on its facts but on the Court of Appeals emphasis on the licensee’s independence of “unlicensed oversight” and that the contract expressly provided for the contractor to “engage a specified licensed person * * * to perform the tasks for which the law specifically requires a license (supra, at 593). On the other hand, the court finds petitioners’ reliance on American Store Equip. & Constr. Corp. v Jack Dempsey’s Punch Bowl (174 Misc 436, 437 [Sup Ct, NY County 1939], affd without opn 258 App Div 794 [1st Dept 1939], affd without opn 283 NY 601 [1940]) misplaced. Clearly, under the Rule, the delegation is heavily controlled and imposes stringent conditions to ensure that no design work is performed by an unlicensed party and that the delegator reviews and approves the design so that there is no “unlicensed oversight”.
The fact that, in Charlebois (supra), the contract specified the licensed engineer responsible for the design work does not, as petitioners so vigorously assert, compel a finding that the subject Rule violates the letter of the Education Law. Petitioners seem to suggest that absent an opportunity for an owner to evaluate the licensee in advance, there is a greater chance for problems to develop. This concern, however, relates more to petitioners’ concern that the contractors and subcontractors may be subject to liability regarding design issues than to the purpose of the Rule itself, namely, to specify under what conditions design work might be delegated so as not to constitute impermissible conduct. Whether or not the licensee has been evaluated by an owner does not negate the fact that, under the Rule, the delegated work is being performed by a licensed professional under stringent conditions.
Nor does the court concur with petitioners that the Rule violates the intent of the Education Law. Concededly, in limiting the practice of certain professions to licensed individuals, the Legislature intended, in part, to protect the public welfare. *929 The fact, however, that the Rule does not require privity to exist between delegators and delegatees does not contravene the underlying intent of the Education Law. Petitioners’ analogy that there is scant distinction between the prohibited practice of a construction company directing one of its licensed employees to perform delegated design work and the same company subcontracting with a licensed professional is faulty, at best. In the first instance, despite certain limited exceptions, a general business corporation cannot engage in the practice of a design profession, even if it employs licensed professionals. In the latter instance, it is not the corporation itself performing or offering the services; it is merely acting as an intermediary to contract with a licensed professional to perform the delegated work. Given this and in accordance with the Rule, the licensee remains responsible for his or her own work, not the unlicensed third party who does not perform the professional service.
Contrary to respondents’ arguments that the controlled form of delegation actually promotes safety by ensuring that special expertise is provided when detailed design work often required for the ancillary project components is being done, petitioners assert that the Rule does nothing to ensure that the delegatee has more expertise than the delegator. Petitioners further note that what respondents characterize as “ancillary” actually includes “virtually every major component of design work for a typical construction project” (Zogg affidavit para 29).
An examination of the Rule compels this court to find otherwise as there is no indication that the delegation procedure compromises public safety. In fact, the court finds the Rule promotes rather than discourages public safety. As stated previously, the provisions concerning delegation are strictly prescribed. For example, the licensee performing the design work must specify all of the parameters that the design must meet; the licensee performing the work has to sign and certify that the licensee has met all of these parameters; and the delegator, upon receiving the design, must review and approve the design as meeting the specified design parameters and ensure that the designed element can be integrated into the over-all project. As respondents contend, these procedures “doubly” assure safety as the delegated work has been designed by a licensed professional and reviewed independently by the delegator.
With regard to the work characterized as “ancillary”, petitioners claim that as defined by the New York State Chapter of the American Institute of Architects, such work *930 includes significant design components. However, as indicated by respondents and the NYSSPE, the design delegation amendment represents no drastic change in current industry practice and, as such, no lowering of the industry’s safety standards. In fact, just the opposite is true as now the delegated work is reviewed by the primary design professional in accordance with the Rule.
Petitioners further argue that Rule 29.3 (b) violates the letter and the intent of sections 101 and 103[3] of the General Municipal Law which set forth the following propositions: that competitive bidding laws require political subdivisions seeking competitive bids to draw specifications so that a common standard of bidding exists; and that specifications cannot shift responsibilities required by statute to be imposed on the owner and/or architect to the contractor. However, the court finds petitioners’ arguments to be without merit as Rule 29.3 (b) not only requires the delegator/primary design firm to provide performance specifications but also to review and approve the design submitted by the delegatee for conformance with the established specifications and parameters. As respondents contend, while complete plans and specifications are required in order to submit bids, complete should not be interpreted as synonymous with having every minute detail specified. Moreover, as it is not uncommon for an originally specified item to be unavailable at the time of construction, respondents assert that design changes must be made to accommodate the vagaries of the industry.
Nor is the court persuaded that by not requiring the delegator to be in privity with the delegatee, Rule 29.3 (b) compromises the goal “of maximum quality at the lowest possible cost” (petitioners’ mem of law, at 12). However, it appears, as stated previously, that petitioners’ genuine concern is not so much that the Rule violates the intent of the law but that it forces contractors and subcontractors to enter into contracts with other licensees to ensure the delegation and performance of selected design work. As stated in the “Assessment of Public Comment”, the State Education Department does not have the *931 authority to require entities to enter into specific contracts. Further, it is undisputed that under section 6506 of the Education Law, it is within the purview of the Board of Regents to supervise the “admission to and the practice of the professions.” As such, the court concurs with respondents that while the Board of Regents does indeed have the authority to promulgate rules governing the conduct and professional responsibility of certain professionals, there is no concomitant authority to establish rules of civil responsibility over unlicensed entities.
According to respondents, because the delegation provided for in Rule 29.3 (b) is so controlled, it actually promotes public safety because the work to be delegated is confined to “ancillary” work and to those licensed professionals who have special expertise in these specific areas. Thus, the procedures as established under the Rule are actually advantageous to the competitive bidding process in that it “opens up a broader range of possible ways to accomplish a particular task” (Martin affidavit para 25) and competitive pricing is ensured because of the design options suggested by the firms. Petitioners argue that by delegating design work through an intermediate entity, the principal design professionals are able to shift design costs out of their contracts and into the contract for construction. However, the court finds that by delegating certain aspects of the project to other licensed professionals who have developed expertise in areas, the primary designer has available to him or her more choices as respondents contend, and thus project costs may be reduced.
Finally, the court finds equally untenable petitioners’ contention that the Rule contravenes the public policy considerations underlying the licensing requirements of the Education Law. The thrust of this claim is that by promulgating a rule that authorizes licensed design professionals to delegate their design responsibilities to a delegatee through the use of unlicensed intermediaries, respondents compromise the public safety and welfare. As an example, petitioners refer this court to Duncan v Missouri Bd. for Architects, Professional Engrs., & Land Surveyors (744 SW2d 524 [Mo 1988]), a Kansas City case involving the collapse of the second and fourth floor walkways of the Hyatt Regency Hotel in which 114 people died and more were injured. According to petitioners, the tragedy occurred as a result of the absence of a contractual relationship between the structural engineering firm which had designed the walkways and the steel fabricator and the complete lack of coordination of design responsibilities between the two.
*932 However, as respondents point out, the accident occurred because the steel fabricator had detailers, not licensed engineers, change the design because of construction issues. Such is not the case under the subject Rule. Under Rule 29.3 (b) the delegated work is restricted to ancillary design which must be performed by a licensed engineer who would then be responsible for certifying his or her own work and which would be reviewed by the primary designer. There is no delegation of design responsibility under the Rule to an unlicensed contractor. Any changes made in the design work must be reviewed by the primary designer in accordance with the Rule.
In light of the foregoing, it is this court’s opinion that Rule 29.3 (b) neither violates the Education Law nor General Municipal Law nor contravenes public policy. Thus, the petition is dismissed for failure to state a cause of action, without costs.

. Petitioners vigorously argue that the position adopted by respondents in this proceeding represents a “radical and abrupt change” as in 1989, Donald Meserve, an attorney with the New York State Education Department, spoke at a seminar in which he indicated that “a corporation, a business corporation, may not offer the professional services, even though they would be provided by a licensee.” At the time, Mr. Meserve served as an advisor to the Deputy Commissioner for the Professions, Fernandez, but did, petitioners concede, admit that he was speaking for himself (Howard affidavit, Oct. 23, 1997).

. AIA New York State is the primary professional organization within the State for licensed architects and the New York State Chapter of the national organization, the American Institute of Architects.

. Section 101 of the General Municipal Law requires separate bidding for plumbing, heating, electrical, ventilating and air-conditioning work to be performed on construction contracts when the entire cost of such work exceeds $50,000 and that such specifications must be drawn to permit separate and independent bidding on such work. Section 103 requires competitive bidding on all public work involving an expenditure of more than $20,000 with an award to the lowest responsible bidder.