OPINION OF THE COURT
Ira B. Warshawsky, J.
This motion brought pursuant to CPLR 3212 by plaintiff for summary judgment on the amended complaint, and the cross motion pursuant to CPLR 3212 by defendants Patrick J. Purcell *401 and Purcell & Ingrao, PC. for summary judgment on the first and second counterclaims alleging entitlement to certain attorney fees and disbursements, and an order dismissing stated portions of the plaintiffs first and second causes of action are denied in part and granted in part.
In February of 1999, the plaintiff and the defendants agreed that both law firms would “work jointly” on a proposed commercial matter referred to Lynn by Purcell, and share equally in any fee which might ultimately be obtained (the fee agreement).
Plaintiff, on February 22, 1999, wrote a letter to Purcell— whom Lynn had known for many years — memorializing the arrangement. It reads: “As we discussed, as between our firms, we will work jointly on this matter and the fee is to be divided equally. From time to time, we should equalize any disbursements.” (Lynn motion, exhibit 2.)
A retainer letter also dated February, 22, 1999 was sent to the commercial client, AYW Networks, Inc., apprising the client of the foregoing arrangement. AYW agreed to pay Purcell and Lynn a contingent fee “equal to 1/3 of the amount of any recovery whether by settlement or verdict.” The retainer letter which was signed only by Lynn but copied to Purcell provides in part:
“We write to confirm our agreement as to the manner in which our firm and the firm of Purcell & Ingrao will undertake to represent you in the above captioned action.
“We will undertake to represent you on a contingency fee equal to 1/3 of the amount of any recovery whether by settlement or verdict . . .
“In this action we will work with the firm of Purcell & Ingrao, who will appear as either co-counsel, or as of counsel. The agreement set forth herein represents the entire fee to be paid by you to both this firm and the firm of Purcell & Ingrao. We will agree between us as to a division of the fee, and contribution for the initial funding of disbursements between the two law firms . . . .”
The AYW action was instituted shortly thereafter, with both the Purcell and Lynn firms listed on the summons and complaint as counsel for AYW.
In December of 2004, after almost six years of litigation, and two weeks of trial, the Lynn firm achieved a settlement.
*402 Upon learning of the settlement, defendant Purcell contacted Mr. Lynn and requested the portion of the settlement representing his fee. In response, Lynn claims that he requested documentation from Purcell evidencing the work Purcell performed in bringing the matter to an acceptable resolution, but that nothing was ever produced. (Amended complaint Iff 22-23.)
After his fee request was rejected, Purcell contacted counsel for the defendants in the underlying AYW case, and informed him that he had a lien on any settlement proceeds. (Complaint 1i 26.) Purcell later withdrew that claim. (Defendants’ cross motion, exhibit V) Plaintiff contends that in light of defendant’s purported threat to place a lien against the settlement, he was required to expend attorney’s fees and significant time in applying to this court for a preliminary injunction, only to have it later withdrawn in light of defendant’s decision to relinquish the lien claim. (Order of Warshawsky, J., Mar. 31, 2005, at 2.)
Thereafter, this action was commenced seeking in the first cause of action declaratory relief that the Purcell defendants are not entitled to any portion of the fee, and, in the second, damages on the grounds that by contacting defense counsel in the AYW matter, and alleging entitlement to a lien, Purcell had tortiously and maliciously interfered with and effectively placed an “embargo” on the settlement proceeds. (Complaint 1ÍH 39, 42; amended complaint 1111 32, 35.)
Defendants answered, interposed several affirmative defenses and asserted by way of counterclaims that plaintiff breached the February 1999 fee agreement by failing to pay them 50% of the fee recovered and also by failing to pay for some $13,639.26 in disbursements.
The first cause of action is a composite of related theories about denying defendants fees. It is argued that defendants are in breach of the February 1999 fee agreement by failing to work jointly, or contribute equally, or do any work at all on the case. Further that defendants’ recent claim for a 10% or 15% referral fee is against the law, and that any fee split under the circumstances presented would be violative of Code of Professional Responsibility DR 2-107 (22 NYCRR 1200.12), the ethical rule which governs fee sharing among unassociated counsel and must be considered in any contract for fee splitting.
As to the alleged breach of contract, and the issue of whether defendant did or did not work jointly on the AYW case, it is settled that “when interpreting a contract, the court should ar *403 rive at a construction which will give fair meaning to all of the language employed by the parties, to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized.” (Matter of John E. Andrus Mem. Home v DeBuono, 260 AD2d 635, 636 [2d Dept 1999]; see also WWW Assoc. v Giancontieri, 77 NY2d 157, 162 [1990] [“when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms”; court held that parol evidence cannot be used to add to or vary the writing that is ambiguous]; see also T.M. Bier & Assoc., Inc. v Piraino, 16 AD3d 578, 579 [2d Dept 2005] [in interpreting a contract one provision should not be left without force or effect].)
“ ‘The best evidence of what parties to a written agreement intend is what they say in their writing.’ ” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002], quoting Slamow v Del Col, 79 NY2d 1016, 1018 [1992].) Further, “[i]t has long been the rule that ambiguities in a contractual instrument will be resolved . . . against the party who prepared or presented it.” (151 W. Assoc. v Printsiples Fabric Corp., 61 NY2d 732, 734 [1984].)
“While the meaning of a contract is ordinarily a question of law, when a term or clause is ambiguous and the determination of the parties’ intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence, then the issue is one of fact.” (Amusement Bus. Underwriters v American Intl. Group, 66 NY2d 878, 880 [1985].)
There is no dispute that the language of the fee agreement referring to the proposed fee split is unequivocal. The parties agreed that they would share equally in any fee obtained. (See, Aiello v Adar, 193 Misc 2d 649, 651 [Sup Ct, Bronx County 2002].) However, and contrary to the plaintiffs contentions, the term “work jointly” does not necessarily denote equality, nor establish that the Purcell firm was obligated to contribute in equal portion to the anticipated work load. How much and what kind of work is not clear from the term “work jointly.” For that matter neither are the words “co-counsel” or “of counsel” found in the retainer letter.
As can be gleaned from the record, the parties’ course of conduct with respect to the work is inconsistent with the plaintiffs claim that equal contributions were contemplated. *404 The documentary record suggests that Lynn performed the work and did not ask Purcell to render any meaningful assistance in the prosecution of the case. Yet, it does not appear that assistance was offered, nor concern expressed.
Insofar as the correspondence submitted reveals, plaintiff first mentioned defendants’ alleged failure to share the work load several years after the litigation commenced. It appears that he did so primarily to buttress his attempts to persuade Purcell to cancel or alter the original fee agreement. (Purcell cross motion, exhibits O, Q, T; defendants’ reply, Oct. 6, 2005, 111113-24.) However, it is easily surmised that for a period of time in the beginning he kept defendants informed, seemingly without feedback.
It is well settled that “ ‘the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.’ ” (Coliseum Towers Assoc. v County of Nassau, 2 AD3d 562, 564 [2003], quoting Old Colony Trust Co. v Omaha, 230 US 100, 118 [1913].)
Plaintiffs contention that defendants’ entitlement to a fee was contingent upon an equal contribution to the work load is rejected. Nevertheless, since the fee agreement plainly states that the two firms would be “working jointly on this matter,” a reasonable inference to be drawn from the language employed is that some sort of contribution or cooperative effort was anticipated and required. (Benjamin v Koeppel, 85 NY2d 549 [1995].) Indeed, as will be seen later, a simple referral would run afoul of DR 2-107. (Nicholson v Nason & Cohen, 192 AD2d 473 [1st Dept 1993].)
Precisely what the parties’ respective contributions were intended to be, and whether Purcell’s input was sufficient to comport with that intent, cannot be ascertained from the ambiguous language employed in the fee agreement nor from the parties’ conflicting submissions. (See e.g., Nigro, D'Anna & Utrecht v Collard, 208 AD2d 911, 912 [2d Dept 1994] [conflict between statement that plaintiff performed legal services and that of defendant that plaintiff performed no services precludes granting summary judgment].) It is also significant that in denying a prior cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), in which essentially the same arguments were raised (plaintiffs motion, exhibit 6), this court expressly determined that issues of fact had been presented with respect to, inter alia, “exactly what was intended by the parties” and *405 whether the “defendants performed sufficient work so as to entitle . . . [them] to 50% of the attorney’s fees recovered” (defendants’ cross motion, exhibit B, slip op at 3).
Apart from the proclaimed breach of contract, but essential to an analysis of defendants’ entitlement to fees, plaintiff claims the fee-sharing agreement is unenforceable as a matter of law as violative of DR 2-107. Although defendants may have performed their obligations under the contract, this court has inherent authority to exercise oversight over fees collected by lawyers. (Code of Professional Responsibility DR 2-106 [22 NYCRR 1200.12]; Jacobson v Sassower, 66 NY2d 991, 992 [1985].)
Insofar as relevant, DR 2-107 (22 NYCRR 1200.12), entitled “Division of fees among lawyers,” provides in part that:
“(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of the lawyer’s law firm, unless:
“(1) The client consents to employment of the other lawyer after a full disclosure [is] made.
“(2) The division is in proportion to the services performed by each lawyer or, by a writing given to the client, each lawyer assumes joint responsibility for the representation.” (Nicholson, 192 AD2d 473 [1993]; Ford v Albany Med. Ctr., 283 AD2d 843 [3d Dept 2001]; 7 NY Jur 2d, Attorneys at Law § 362; see also, Frank R. Rosiny, Outside Counsel, Recent Developments in the Law on Fee-Sharing Agreements, NYLJ, Nov. 6, 2003, at 4, col 4.)
It is settled that
“in disputes among attorneys over the enforcement of fee-sharing agreements the courts will not inquire into the precise worth of the services performed by the parties as long as each party actually contributed to the legal work and there is no claim that either ‘refused to contribute more substantially.’ ” (Benjamin, 85 NY2d at 556 [1995], quoting Sterling v Miller, 2 AD2d 900 [1956], affd 3 NY2d 778 [1957]; see also, Graham v Corona Group Home, 302 AD2d 358, 359 [2d Dept 2003] [courts will not inquire into the value of work involved in fee splitting and where it is conceded that referring attorney performed 10% of the work, 10% fee-splitting agreement will be enforced]; Alderman v Pan Am World Airways, 169 F3d 99, 104 [2d Cir 1999].)
*406 Although there must be a showing that the forwarding attorney did more than merely recommend a particular lawyer (Nicholson at 474), “[t]he sharing of work or responsibility may be rendered even by correspondence.” (Alderman at 104; cf., Benjamin at 552.)
To be sure, a fee-sharing agreement which violates the Code of Professional Responsibility is void as against public policy. (Ford, 283 AD2d at 844.) On the other hand, “forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as ‘a sword for personal gain rather than a shield for the public good’.” (Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 128 [1992], quoting Charlebois v Weller Assoc., 72 NY2d 587, 595 [1988].) It has been observed that where reasonable and “freely negotiated, ... a contingent fee agreement, as with any contract” should be enforced in accord with the parties’ intentions. (Alderman at 102-103.)
Plaintiff claims that since Purcell never personally signed or executed any writing assuming “joint responsibility for the representation,” and provided no legal assistance, he cannot recover the disproportionate and allegedly excessive fee he is now seeking. As a result, the majority of the fee should be retained by plaintiff.
Since plaintiff has established facts to sustain its prima facie burden entitling it to judgment on the first cause of action as a matter of law (see, Zuckerman v City of New York, 49 NY2d 557, 562 [1980]), the burden falls upon defendants to show the existence of a viable issue tending to prove that each of the parties assumed joint responsibility for the representation of AYW and by a writing to AYW informed it of that fact so as to be entitled to half of the fee recovered.
In order to raise issues of fact sufficient to defeat a motion for summary judgment where the movant has presented prima facie evidence in support of its entitlement to such relief, it is incumbent upon the party opposing summary judgment to raise triable issues of fact based upon more than mere conclusory or unsupported assertions. (See Sun Yau Ko v Lincoln Sav. Bank, 99 AD2d 943, 943 [1984], affd 62 NY2d 938 [1984], citing Zuckerman v City of New York, 49 NY2d 557 [1980].)
Defendants oppose this claim by observing that the rule does not require an individually executed writing, and that the February 1999 retainer agreement sent by Lynn to AYW satisfies any requirement imposed by the rule.
*407 The text of DR 2-107 bears repeating: “[(T)here shall be no division of fees disproportionate to the legal duties performed unless] by a writing given the client, each lawyer assumes joint responsibility for the representation.” (Code of Professional Responsibility DR 2-107 [a] [2] [22 NYCRR 1200.12 (a) (2)].) There is no evidence of any such writing in the record before this court. The fact that “joint responsibility” is an ill defined term of art (Aiello v Adar, 193 Misc 2d 649, 658 [Sup Ct, Bronx County 2002]) does not compel a different conclusion. There is no evidence that both law firms took full, yet severable, responsibility for bringing AYW’s claim to a favorable conclusion. Defendants’ claim that it followed AYW’s odyssey to this tribunal from the missives sent by plaintiff, and that the parties and Mulligan discussed the case periodically at the golf club to which they all belonged, and defendants knew of the financial stress the file was causing, does not equate with “joint responsibility.” There is neither a writing nor a course of conduct offered by defendants which shows joint responsibility.
The record supports no other conclusion but that defendants, by their writing, conduct and words, did not wish to engage in the hard work required to bring AYW’s claim to fruition. Nor to bear the despair when it teetered on the brink of ruin. It is not dispositive that Mulligan testifies that he thought both law firms would work on his case. What was needed was a commitment and conviction that both law firms would advocate for him to the greatest extent of their experience and ability — when needed — and take responsibility for the consequences of the decisions made. (Aiello, 193 Misc 2d at 658-659.) If AYW had lost the case it cannot be said with certainty that it would have been of any moment to defendants. AYW knew of and agreed to defendants’ participation in the case. But, in the absence of “joint responsibility,” which is the circumstance here, the fee agreement is disproportionate to the services defendants claim they performed. Accordingly, defendants can only be compensated according to quantum meruit.
The foregoing determination does not settle all issues before the court. The issue remains for determination whether defendants worked on the case or viewed it as a referral. It is settled that “[w]hen interpreting a statute, [courts] turn first to the text as the best evidence of the Legislature’s intent [since] ‘[a]s a general rule, unambiguous language of a statute is alone determinative.’ ” (Matter of Theroux v Reilly, 1 NY3d 232, 239 [2003], quoting Riley v County of Broome, 95 NY2d 455, 463 *408 [2000]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998].)
Finally, so much of defendants’ cross motion as seeks dismissal of plaintiffs second cause of action alleging a tortious attempt to “embargo” the settlement proceeds is denied.
The parties’ opposing claims with respect to Purcell’s underlying motives and intent in attempting to interpose the lien raise issues of fact which cannot be summarily resolved on the papers before the court. The court notes that essentially the same claims were made by the Purcell defendants in support of their prior cross motion to dismiss the “embargo” claim, which motion was denied in its entirety (see, Purcell affirmation, Jan. 6, 2005, in support of prior cross motion, 1Í1Í 40-41 [plaintiffs motion, exhibit 6]; order of Warshawsky, J., Mar. 31, 2005).
Similarly, the record contains conflicting claims with respect to the payment of the disbursements allegedly due and owing. While Lynn contends that he paid the sum due in December of 2004 and has annexed a cover letter and (uncashed) check as proof of his claim (Lynn affirmation, July 29, 2005, II 20 n 4 [exhibit 4]), defendants argue that they never received the check and, in fact, have yet to otherwise receive any payment for the claimed disbursements (Purcell affirmation, Aug. 25, 2005, 1111 49-50).
Accordingly, it is ordered that the motion by plaintiff for summary judgment on the first and second causes of action is denied. Pursuant to CPLR 3212 (b), a trial shall be had on the issue of whether defendants’ participation in the underlying AYW case entitles them to legal fees pursuant to DR 2-107, i.e., on a theory of quantum meruit. It is further ordered that defendants’ cross motion for summary judgment on the first counterclaim is denied. The court has searched the record pursuant to CPLR 3212 (e) and finds consistent with the foregoing finding that the fee agreement is unenforceable pursuant to DR 2-107, and in accordance with plaintiffs tender of payment of disbursements which are the subject of the second counterclaim, partial summary judgment is granted on the second counterclaim. Plaintiff shall forward payment of the sum of $13,545.13 to defendants within five business days of receipt of a copy of this order.