[907 NYS2d 821]

In the Matter of the Estate of Samuel A. Garrasi, Deceased, et al.

Surrogate's Court, Schenectady County, September 8, 2010

### APPEARANCES OF COUNSEL

*Robert Garrasi*, petitioner pro se. *Englert, Coffey, McHugh & Fantauzzi, LLP*, Schenectady (*Peter V. Coffey* of counsel), for Barris, Sott, Denn & Driker, PLLC, respondent/petitioner. *McNamee, Lochner, Titus & Williams, P.C.*, Albany (*Richard Cirincione* of counsel), for Sallie Hume Garrasi and others. *Lavelle & Finn*, Latham (*Martin Finn* of counsel), guardian ad litem for Kevin Aggen.

### OPINION OF THE COURT

Vincent W. Versaci, S.

The court has pending before it several motions that have been filed with respect to the proceeding to determine the validity of a claim for legal services pursuant to SCPA 1809 and to recover legal fees pursuant to SCPA 2103 commenced by the executor and trustee Robert Garrasi (hereinafter petitioner). After issue was joined and following some earlier motion practice, petitioner filed a notice of motion to strike the amended answer of the respondent Barris, Sott, Denn & Driker, PLLC, and to dismiss the cross petition. Respondent filed a notice of cross motion for summary judgment to dismiss the petition and grant the second cross petition seeking payment of the outstanding balance of its legal fees. In addition, petitioner filed two other motions relating to this proceeding: one for a protective order prohibiting respondent from taking his deposition; and one ex parte motion for the posting of a bond as security for costs. These two motions are also still pending before this court.

Petitioner bases his claim for disallowance of legal fees primarily on the alleged violation of Judiciary Law § 470 by the respondent, specifically Attorney Douglas W. Stein.[1] Petitioner claims that Attorney Stein engaged in the unauthorized practice of law in New York State after he relocated to Michigan in 2003 and failed to maintain a law office in New York while continuing to represent the petitioner in this matter. Petitioner claims that this alleged violation of Judiciary Law § 470 renders his retainer agreement with Attorney Stein illegal and void ab initio as against public policy, resulting in a forfeiture of all legal fees

---

1. Petitioner's arguments that the respondent violated other sections of the Judiciary Law will be discussed infra.

billed to the petitioner for services performed after his relocation to Michigan.

Although respondent admits that Attorney Stein did not maintain an office for the practice of law in New York after he moved to Michigan in 2003, respondent denies that Judiciary Law § 470 was violated or that it even applies given the facts and circumstances of this case. Further, respondent questions the constitutionality of Judiciary Law § 470, and argues that a strict interpretation and application of the statute to this type of case is unprecedented. In addition, respondent believes that the petitioner's demand that the respondent be ordered to forfeit all of its legal fees is unwarranted and this result, respondent argues, would only serve to unjustly enrich the petitioner.

Respondent also claims that the petitioner is equitably estopped from seeking a refund of the legal fees that he voluntarily paid to the respondent more than three years ago for legal services actually performed to the petitioner's satisfaction. Finally, respondent claims that it is entitled to the outstanding balance of legal fees due and owing based on an account stated in the amount of $6,896.30.

Since the material facts relevant to a proper adjudication of the pending motions are not in dispute, the court can dispense with the need for a hearing and will proceed to determine the remaining questions of law, beginning with the applicability of Judiciary Law § 470 to this case.[2] Judiciary Law § 470 reads as follows:

> "§ 470. Attorneys having offices in this state may reside in adjoining state
>
> "A person, regularly admitted to practice as an attorney and counsellor, in the courts of record of this state, whose office for the transaction of law busi-

---

2. Petitioner initially argued that Supreme Court Justice and Acting Surrogate Vincent J. Reilly, Jr. previously determined that the respondent had violated Judiciary Law § 470 by engaging in the unauthorized practice of law, when he denied the respondent's motion for Attorney Stein to be admitted pro hac vice nunc pro tunc by order dated April 26, 2010. Petitioner alleges that Judge Reilly's decision resolved this question of law, and is the law of the case.

This court has reviewed the transcript of the proceedings held before Judge Reilly on March 12, 2010, which includes his bench decision denying the respondent's pro hac vice motion. While Judge Reilly commented on the ramifications of the illegal practice of law as alleged by petitioner, he did not make a finding or ruling that the respondent had engaged in such illegal practice. Accordingly, this issue is still ripe for the court's review.

ness is within the state, may practice as such attorney or counsellor, although he resides in an adjoining state."

In support of its argument that this section of the Judiciary Law does not apply here, respondent points to the fact that at the time that Attorney Stein began representing the petitioner and entered into a retainer agreement with him, Attorney Stein was employed by Pierro & Associates, LLC also known as Pierro Law Group, and maintained his law office at the firm's offices located in Albany, New York. He continued to practice law from that location until 2003 when he relocated his residence to Michigan and began working for the respondent. At that time, despite his knowledge that Attorney Stein had separated from the Pierro Law Group, had relocated to Michigan and was working for a different law firm located in Michigan, petitioner requested that Attorney Stein continue to represent him in this matter. Attorney Stein agreed, and continued to represent the petitioner over the next four years, or up until 2007.

Respondent argues that these facts distinguish this case from the reported cases that have applied Judiciary Law § 470. (*See e.g. Matter of Tatko v McCarthy*, 267 AD2d 583 [1999]; *Elm Mgt. Corp. v Sprung*, 33 AD3d 753 [2006]; *Lechtenstein v Emerson*, 251 AD2d 64 [1998]; *Keenan v Mitsubishi Estate, N.Y.*, 228 AD2d 330 [1996].) These cases involve situations where the out-of-state attorney did not have a New York presence at the time the lawsuit was commenced nor ever had a New York presence. Respondent contends that Judiciary Law § 470 should not be extended to cases where, like the one presented here, a New York attorney commences an action, then moves out of state during the pendency of the action but continues to appear in the New York action at the request of the client and without opposition from any interested party. The respondent states that allowing the attorney to appear in the New York litigation even after his relocation would ensure continuity of representation and permit the client to have the counsel of his choosing. Respondent further argues that the client, like the petitioner in this case, who has demanded that the attorney continue to represent him despite having moved out of state, has essentially waived or opted out of the requirements of Judiciary Law § 470.

Respondent's attempt to distinguish this case from those cited above is flawed. Nowhere in those cases do the courts, in applying Judiciary Law § 470, draw a distinction between an attorney's lack of presence in New York at the commencement of

a lawsuit and a lack of presence in New York occurring at some point after the commencement but before resolution of the lawsuit. Nor does the plain wording of Judiciary Law § 470 make such a distinction or carve out an exception to its application in cases where the lack of presence in New York comes about during the pendency of the lawsuit. Although there is no authority on point, the court finds that respondent's distinction is, in essence, a distinction without a difference, and should not matter in applying the unambiguous language of Judiciary Law § 470. Clearly, the statute applies regardless of what stage or when the offending attorney's presence evaporates from the jurisdiction. This court is also unpersuaded by respondent's argument that the petitioner opted out of the requirements of Judiciary Law § 470. While this is a novel argument and one certainly worthy of consideration, there is no caveat written into the statute allowing for such a waiver. Accordingly, the court finds that the requirements of Judiciary Law § 470 do apply in this case.

To briefly address the respondent's constitutional challenge to the restrictions imposed by Judiciary Law § 470, this court is constrained to follow the First Department's decision in *Lichtenstein v Emerson* (251 AD2d 64, 64-65 [1998]), finding that "the New York office requirement of Judiciary Law § 470 [does not] violate[ ] the Privileges and Immunities Clause of the United States Constitution . . . [and] is, accordingly, constitutional." The First Department cited the State's legitimate interest "in ensuring that a lawyer practicing within its boundaries is amenable to legal service and to contact by his or her client, . . . and a State may, therefore, reasonably require an attorney, as a condition of practicing within its jurisdiction, to maintain some genuine physical presence therein" (*id.* [citation omitted]).[3] While the respondent cites to U.S. District Court Judge Kahn's decision in *Schoenefeld v State of New York* (09-CV-0504 [ND NY]) in support of its challenge, this decision merely found that the "plaintiff's privileges and immunities claims can go forward," thus presenting no binding authority on this court to endorse respondent's challenge. Accordingly, respondent's constitutional challenge to Judiciary Law § 470 is hereby rejected by this court.

---

**3.** *See also White Riv. Paper Co. v Ashmont Tissue* (110 Misc 2d 373, 378 [1981]) (where the court found that "the local office requirement for nonresidents does not result in disparate treatment and the fact that litigation can be more effectively resolved without a trial if there is a local presence justifies such a mandate").

Having found that the restrictions imposed by Judiciary Law § 470 are constitutional and do apply in this case, the court must next decide whether these restrictions were violated by the respondent and, more specifically, Attorney Stein. Despite its admission that Attorney Stein did not maintain a law office in New York after he moved to Michigan in 2003, respondent contends that during the years that Attorney Stein represented the petitioner after his move to Michigan, he continued to maintain a connection with his former New York law firm, Pierro & Associates, LLC. This firm is where Attorney Stein was employed when he first began representing the petitioner. In fact, Pierro & Associates, LLC, also known as Pierro Law Group, also continued to perform legal services for the petitioner after Attorney Stein left the firm, and billed the respondent for these services (*see* exhibits A-C annexed to the affidavit of Yuh Suhn Kim, sworn to on June 8, 2010, in support of respondent's cross motion for summary judgment). Respondent argues that this connection is enough to satisfy the requirements of Judiciary Law § 470.

This court disagrees. Despite his continued contact with the Pierro Law Group after he moved to another state, the fact remains that Attorney Stein failed to physically maintain an "office for the transaction of law business in New York" within the plain meaning of Judiciary Law § 470. Similar to the facts in *Lichtenstein v Emerson* (251 AD2d at 64), there is no indication that Attorney Stein had a designated telephone number in New York, a New York address at which to receive service of process, or that he had designated the Pierro Law Group to accept telephone calls and service of process on his behalf. (*See also Matter of Haas*, 237 AD2d 729, 730 [1997].)

Notably, respondent's papers do not contain an affidavit from Louis W. Pierro, or any other member of his firm, to establish that Attorney Stein continued to maintain an office with the Pierro Law Group, or maintained an of counsel relationship with that firm or any other professional affiliation. (*Cf. Tatko v McCarthy*, 267 AD2d at 584 [the establishment of an of counsel relationship with a New York attorney having an office in New York was sufficient to meet the requirements of Judiciary Law § 470]; *Keenan v Mitsubishi Estate, N.Y.*, 228 AD2d at 331 [requirements of Judiciary Law § 470 met by a reciprocal satellite office sharing agreement with a New York law firm]; *CA Constr., Inc. v 25 Broadway Off. Props., LLC*, 2010 NY Slip Op 30665[U] [2010] [court found compliance with Judiciary Law

§ 470 based on an ongoing agreement with a New York law firm that included use of space, a desk, conference room, and a designated individual authorized to accept service for the Connecticut law firm].) None of the indicia present in these cases are present in the instant case.

In fact, the billings annexed to Yuh Suhn Kim's affidavit as exhibits A-C referenced above indicate a relationship to the contrary. Attorney Stein's name does not appear anywhere on the letterhead of the Pierro Law Group. Furthermore, the billings themselves are a clear indication that Attorney Stein no longer maintained a physical presence here in New York or an affiliation with the Pierro Law Group, since Attorney Stein was actually billed by the Pierro Law Group for the work it performed for the petitioner. The above-mentioned bills were sent to Attorney Stein at the respondent's Michigan address where he was employed full time.

Accordingly, the court finds that Attorney Stein and, by extension, the respondent fell out of strict compliance with the requirements of Judiciary Law § 470 after he relocated to Michigan, thereby violating the statute. However, this violation does not render the parties' retainer agreement a nullity as alleged by the petitioner. (*See Elm Mgt. Corp. v Sprung*, 33 AD3d at 754 [where the Second Department found that "noncompliance with the requirements of Judiciary Law § 470 . . . does not create a 'nullity' or render all prior proceedings void per se"], citing *Dunn v Eickhoff*, 35 NY2d 698 [1974]; *Matter of Lackas*, 65 AD2d 800 [1978].) The Court further found that "the plaintiff will be held bound by acts taken on its behalf by its unauthorized attorney, unless it demonstrates at a hearing that it suffered prejudice as a result of being represented by an unauthorized attorney." (*Id.*)

Nowhere in the record before this court is there any indication that the petitioner suffered any prejudice as a direct result of Attorney Stein moving to Michigan and failing to maintain a law office here in New York. In fact, during oral argument, the petitioner admitted that he had benefitted from Attorney Stein's representation, and that he was satisfied with the quality of his services. He could not identify how he was damaged by Attorney Stein's relocation, other than speculating that "maybe" his move "could have" cost him money that he would have otherwise saved had he used the services of the Pierro Law Group instead of Attorney Stein.

Without a showing of prejudice, petitioner remains bound by the retainer agreement and the legal services provided thereun-

der. Furthermore, there is ample authority to support the respondent's position that the petitioner is not entitled to a forfeiture of its fees due to a violation of Judiciary Law § 470. The Court of Appeals in *Benjamin v Koeppel* (85 NY2d 549 [1995]) addressed the issue of fee forfeitures when a similar statute, Judiciary Law § 468-a, had been violated. In that case, the plaintiff attorney had failed to register as required by Judiciary Law § 468-a. Despite his violation of this statute, the Court held that "an attorney who has not complied with Judiciary Law § 468-a's registration requirements may nonetheless recover payment for professional legal services rendered during the period of noncompliance." (85 NY2d at 549.) The Court reasoned as follows:

> "[T]he violation of a statute that is merely *malum prohibitum* will not necessarily render a contract illegal and unenforceable [*Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d 124, 127 (1992)]. 'If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . . the right to recover will not be denied' (*Rosasco Creameries v Cohen*, 276 NY 274, 278)." (85 NY2d at 553.)

The *Benjamin* Court went on to note the important legal tenet that "fee forfeitures are disfavored and . . . such forfeitures may be particularly inappropriate where there are other regulatory sanctions for noncompliance" (85 NY2d at 553, citing *Lloyd Capital Corp. v Pat Henchar, Inc.*, 80 NY2d at 128; *Charlebois v Weller Assoc.*, 72 NY2d 587, 595 [1988]; *Rosasco Creameries v Cohen* at 279-280). Quoting from the *Charlebois* decision (at 595), the Court reiterated its view that "courts are especially skeptical of efforts by clients or customers to use public policy 'as a sword for personal gain rather than a shield for the public good.' " (85 NY2d at 553.)

The court finds that these same principles apply to this case. Judiciary Law § 470, like Judiciary Law § 468-a, is a regulatory statute that does not expressly provide for a fee forfeiture in the event of its violation. It is not punitive or remedial on its face, and the existence of other possible disciplinary sanctions for noncompliance "militates against imposing a civil forfeiture by nullifying a bargained-for contractual obligation." (*Benjamin v Koeppel*, 85 NY2d at 555.) In this court's opinion, petitioner is using the respondent's violation of Judiciary Law § 470 "as a

sword for personal gain" (85 NY2d at 553), which will not be countenanced. Furthermore, to impose the drastic remedy of a complete forfeiture of fees for legal services that the petitioner accepted and has admitted were performed to his satisfaction, all because Attorney Stein technically violated a regulatory statute under circumstances that the petitioner knew about and consented to, is not what the Legislature intended, is unwarranted, and would, as argued by the respondent, result in the petitioner being unjustly enriched.

To the extent that the petitioner is claiming that Attorney Stein violated any other sections of the Judiciary Law, namely sections 478, 484 or 485, these claims can be quickly dismissed as these sections clearly do not apply in this case. There is no question that at all times during his representation of the petitioner, Attorney Stein was duly and regularly licensed and admitted to practice law in the courts of record of the State of New York. Therefore, Judiciary Law §§ 478 and 484 have clearly not been violated, and Judiciary Law § 485 does not include a violation of Judiciary Law § 470 in its list of sections the violation of which constitutes a misdemeanor. Accordingly, these additional claims offered by the petitioner are hereby dismissed for lack of merit.

Finally, respondent's attempt to invoke the doctrines of account stated, voluntary payment and equitable estoppel is unavailing. These principles, while applicable and in some instances dispositive in an ordinary fee collection action, are not applicable to a determination by the surrogate of the attorneys' fees to be awarded in an estate proceeding. (See SCPA 2110 [1] [which authorizes the court, "(a)t any time during the administration of an estate and irrespective of the pendency of a particular proceeding, . . . to fix and determine the compensation of an attorney for services rendered to a fiduciary or to a devisee, legatee, distributee or any person interested"]; see also Matter of Stortecky v Mazzone, 85 NY2d 518, 525-526 [1995] [where the Court of Appeals held that the Surrogate has the "inherent power to supervise the fees attorneys charge for legal services," and has "the authority to inquire into the reasonableness of counsel's fee even though agreed upon by the executor and assented to by the beneficiaries"].)

Thus, even if the respondent can establish that an account has been stated to the petitioner, and that petitioner voluntarily paid the preponderance of the fees billed without protest, this court still has the broad discretion to determine the fair and

reasonable value of the legal services performed, applying the factors enunciated in *Matter of Freeman* (34 NY2d 1 [1974], citing *Matter of Potts*, 241 NY 593 [1925]) and *Matter of Von Hofe* (145 AD2d 424 [1988]). At the present time, the court does not have enough information to properly apply these factors, but will revisit the issue of attorneys' fees at the conclusion of the final accounting proceedings. At that time, the court will, in its sound discretion, apply the requisite factors alluded to above, determine the fair and reasonable fee due and owing to the respondent for the legal services it has performed in this matter, and decide from what source the fee should be paid.

Accordingly, based on all of the foregoing, petitioner's motion to strike the respondent's amended answer and cross petition is hereby granted, and the respondent's cross motion for summary judgment to dismiss the petition is hereby granted, thus concluding this claim proceeding. However, the court reserves decision as to the reasonableness of the fees charged by the respondent, which decision rests within the sound discretion of this court, and will be addressed at the final accounting stage. In light of the above rulings, petitioner's motions for a protective order and for the posting of a bond are rendered academic and thus hereby denied.